Porto Rican & American Insurance Co., demandante y apelante *v.* Juan G. Gallardo, como Tesorero de Puerto Rico, demandado y apelado.

No. 3789.—*Visto:* Febrero 2, 1926.  *Resuelto:* Julio 29, 1926.

1. Contribuciones—"Levy" y Tasación *(Assessment)*—Modo de Tasar Acciones *(Stock)*, Propiedades e Ingresos de la Corporación—Preceptos Estatutorios—Interpretación.—Una lectura del artículo 317 del Código Político demuestra que fué la intención de la Legislatura imponer una contribución sobre la propiedad mueble de las corporaciones domésticas y no a los accionistas, conclusión que se robustece en vista del plan general del Título IX de dicho código, imponiendo contribución sobre la "propiedad" mueble e inmueble.

2. Contribuciones—"Levy" y Tasación *(Assessment)*—Modo de Tasar en General—"Valor" y "Valoración"—Propiedad a que se Refiere.—Las palabras "valor" y "valoración" generalmente se refieren a propiedad tangible.

3. Contribuciones—Responsabilidad de Personas y Propiedades—Corporaciones, "Corporate Stock" y Bienes—"Capital" y "Capital en Acciones."—Cuando un estatuto impone contribución sobre el "capital" *(capital)* o "capital en acciones" *(capital stock)* de una corporación, como las palabras usadas son equivalentes, la contribución recae sobre la corporación misma a menos que la Legislatura exprese claramente una intención distinta.

4. Cuando se impone una contribución sobre una corporación directamente, la propiedad exenta debe ser deducida de la tasación.

5. Derecho Constitucional—Distribución de los Poderes y Funciones Gubernamentales—Poderes Legislativos y Delegación de los Mismos—Su Delegación en General.—Al artículo 317 del Código Político debe dársele una interpretación tal que no deje a opción del Tesorero el elegir entre la corporación y los accionistas para imponer la contribución; de lo contrario surgiría una intentada delegación del poder legislativo que no es permisible bajo una constitución.

Sentencia de *Charles E. Foote,* J. (San Juan, Primer Distrito), declarando sin lugar la demanda, con costas.  *Revocada.*

*J. J. Ortiz Alibrán,* abogado de la apelante; *Hon. Attorney General George C. Butte, Carlos Llauger Díaz* y *J. A. López Acosta,* abogados del apelado; *H. Franceschi* radicó alegato como *amicus curiæ* en representación de la firma *Armstrong, Keith & Kern.*

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

La demandante Porto Rican & American Insurance Co. es una corporación doméstica organizada de acuerdo con las leyes de Puerto Rico y sujeta al pago de contribuciones impuestas por las leyes vigentes. Dicha corporación rindió al Tesorero de Puerto Rico una declaración de bienes correspondiente al año 1922–23, en la cual se incluyó primeramente el montante de sus acciones y ganancias no divididas, tomando como valor de dichas acciones lo que aparece de la faz de ellas, o sea, $100, ascendiendo dicha propiedad a $66,190; además una descripción detallada de la propiedad perteneciente a la citada corporación es la siguiente:

| | |
|---|---:|
| Efectivo en caja | $6,448.66 |
| Bonos de la Libertad | 90,537.26 |
| Acciones de corporaciones | 11,850.00 |
| Créditos hipotecarios | 16,000.00 |
| Pagarés y otros créditos | 14,409.65 |
| Total | $139,245.57 |

El Tesorero de Puerto Rico tomó como base para la tasación el capital en acciones por su valor a la par, $60,000, y las ganancias no divididas, $6,190, en total $66,190, y requirió a la demandante a que pagara la suma de $1,323.80. Después que la Junta de Revisión e Igualamiento en apelación confirmó la decisión del Tesorero, la demandante pagó dicha cantidad bajo protesta y presentó esta demanda que la corte de distrito declaró sin lugar.

La demandante en la corte de distrito alegaba que el Tesorero no tenía derecho a imponerle contribución alguna excepto sobre el efectivo en caja, o sea sobre $6,448.66, pues los bonos de la Libertad, acciones de corporaciones, créditos hipotecarios y pagarés, estaban exentos de contri-

bución por virtud tanto de las leyes de los Estados Unidos como de las Leyes de Puerto Rico y que de estas últimas era aplicable el artículo 291 del Código Político.

Al considerar este caso nos hemos confrontado con varias proposiciones. Primera, y ésta principalmente es la posición del Tesorero de Puerto Rico, que la contribución que se desea imponer por virtud del artículo 317 del Código Político recae por sus términos sobre los accionistas y no sobre la corporación misma; segunda, y ésta fué la posición de la corte inferior, que la contribución es un arbitrio y por consiguiente, según la corte, rigiéndose en gran parte por la decisión del caso de *France & New York Medicine Co.* v. *Reily et al*, 31 D.P.R. 650, recae sobre los accionistas más bien que sobre la corporación; y tercera, que la contribución que se intenta imponer es en realidad sobre la franquicia de incorporación concedida por el Pueblo de Puerto Rico. La teoría envuelta en cualquiera o en todas estas proposiciones es que bienes muebles exentos de contribuciones no pueden ser deducidos por la corporación.

[1, 2] El artículo 317 del Código Político, según fué enmendado en 1904, dice así:

La propiedad mueble de instituciones, corporaciones y compañías incorporadas con arreglo a las leyes de Puerto Rico fuera de las instituciones bancarias con capital en acciones deberá tasarse como perteneciendo a tales instituciones, corporaciones y compañías por el Tesorero de Puerto Rico, en la forma que este artículo provee. El valor efectivo actual del capital de las citadas corporaciones, se fijará por el Tesorero de Puerto Rico de conformidad con la declaración jurada de los presidentes, directores u otros funcionarios al frente de tales corporaciones, como se requiere por el artículo 319, o basándolo en cualquier otro informe fidedigno que el Tesorero tenga o adquiera, y el valor efectivo actual no será en ningún caso menos que el valor del capital y bonos, más el sobrante y ganancias no divididas de dichas instituciones, corporaciones y compañías; ni será menor del valor en el mercado de los bienes inmuebles y muebles de dichas instituciones, corporaciones y compañías, incluyendo en los bienes muebles todos los derechos, fran-

quicias y concesiones. De la tasación obtenida en esta forma se deducirá el valor total de la propiedad inmueble de dichas corporaciones, que resulte de la tasación verificada de acuerdo con las disposiciones del artículo 316; y el resto será considerado como que representa la propiedad mueble de dichas corporaciones que ha de someterse a contribución.

La simple lectura de este artículo tendería a convencernos de que la legislatura tuvo en mente imponer una contribución sobre la propiedad de la corporación y sobre los bienes muebles de la corporación. El Tesorero en realidad no tiene elección. De la declaración de bienes rendida por la corporación o de cualquiera otra información que él pueda obtener, debe, después de deducir el valor de la propiedad inmueble, tasar el capital, bonos y ganancias no divididas de la corporación por su valor, y si ese valor es menor que el valor en el mercado de toda la propiedad de la corporación, entonces dicho valor en el mercado deberá tomarse como base para la tasación. Si surge alguna confusión en la mente a causa del lenguaje usado a mediados de este artículo, el fin de la legislatura queda aclarado por las palabras que aparecen a la terminación del mismo: "y el resto será considerado como que representa la propiedad mueble." Si a causa de la equivalencia que desea establecerse por dichas palabras finales la intención es algo dudosa, queda aclarada en el preámbulo contenido en el mismo artículo. La "propiedad mueble" de una corporación deberá ser tasada en la forma que se dispone en este artículo. El Tesorero solamente debe adoptar la forma que produzca la valoración más alta de dicha propiedad mueble. El no tiene poder para seguir un método o establecer una base que dé los mejores resultados a El Pueblo de Puerto Rico, a no ser eligiendo la forma que dé la valoración más alta de la propiedad de la corporación, cuya tasación desea hacer el Tesorero. Según el artículo 317 él no tiene poder para imponer una contribución a los accionistas, sino solamente sobre la propiedad personal de instituciones, corpo-

raciones y compañías incorporadas bajo las leyes de Puerto
Rico.

Si bien cuando se van a imponer contribuciones a una
franquicia de incorporación y la legislatura así lo ha de-
terminado, la tasación de la franquicia puede determinarse
más o menos del modo expuesto en el artículo 317, *Schwab*
v. *Richardson,* 263 U. S. 88; *Tremont & Suffolk Mills* v.
*Lowell,* 178 Mass. 471; *Hannan* v. *First National Bank,*
269 Fed. 531. Sin embargo, el uso de las palabras "va-
lor" (*value*) y "tasación" (*valuation*) es significativo · y
generalmente indican una contribución sobre la propiedad
y no una franquicia o un arbitrio. *Powers* v. *Detroit &
Grand Haven Railway,* 201 U. S. 561, donde la corte dijo
que se intentaba más bien una valuación que un prorrateo
matemático (*mathematical apportionment*); *Bank of Com-
merce* v. *New York,* 7 Black 620; *Pingree* v. *Dix,* 44 L.R.
A. 688; Cooley sobre Contribuciones, vol. 2, párrafo 850,
4ta. Edición. Generalmente las palabras "valor" (*value*)
y "tasación" (*valuation*) se refieren a un precio tangible
y al precio tangible de la propiedad. En el caso de *Hanna,
supra,* en que se permitió una tasación, la legislatura hizo
constar claramente que la contribución debía ser pagada
por los accionistas.

La subdivisión de contribuciones en el Código Político
tiende fuertemente a demostrar que fué la intención de la
legislatura imponer contribuciones sobre propiedad tangi-
ble o sobre la propiedad inmueble que la representara, se-
gún se expone particularmente en el artículo 317 y también
que no había intención de hacer la valuación una medida
para otra cosa que no fuera una contribución sobre el ca-
pital de la corporación según estaba representado por sus
bienes.

El título 9 del Código Político está dedicado a rentas.
El capítulo 1 del mismo por su título se refiere a tasación
de la propiedad. El artículo 285, según fué aprobado ori-
ginalmente, imponía cierto tipo de contribución sobre bie-

nes inmuebles y muebles que no pertenecieran a corporaciones y un tipo distinto y más alto sobre todos los bienes inmuebles y muebles pertenecientes a todas las corporaciones. En los libros de texto se comenta la tendencia a imponer contribuciones más altas a las corporaciones, pero tal exceso está justificado siempre por los privilegios peculiares, la protección y responsabilidad limitada concedida a tales entidades artificiales creadas por el Estado. Con una sola diferencia en el tipo de contribuciones la idea era imponer contribuciones a todas las personas de Puerto Rico de la misma manera. El artículo 285 fué derogado implícitamente por sustitución en 1908. El tipo de contribución se hizo el mismo para todas las personas por la ley de 12 de marzo de 1908, pág. 189, que sustituyó dicha ley. La contribución se imponía sobre toda propiedad mueble e inmueble existente en Puerto Rico. La división de contribuciones en "inmuebles" y "muebles", según fueron designadas originalmente por la Legislatura, permaneció inalterada. El artículo 317 estaba en armonía a este respecto con el artículo 285 antes de 1908, y en ese año no hubo intención de variar la armonía existente hasta entonces. No se hizo nada para demostrar que la contribución fijada por el artículo 317 debía referirse a franquicias o arbitrios o que sus palabras debían interpretarse en un sentido distinto al indicado originalmente por el artículo 285.

El artículo 290 del Código Político es como sigue:

"Art. 290.—Que toda propiedad no exenta expresamente del pago de contribuciones será tasada como imponible. Para los efectos de la tasación de contribuciones la frase 'propiedad real' se considerará sinónima de 'inmueble', según la definición hecha en los artículos 333, 334, y 335 del Código Civil; *Disponiéndose, sin embargo,* que las maquinarias, vasijas, e instrumentos o implementos no adheridos al edificio o suelo no se considerarán como inmuebles. Los bienes muebles comprenderán dichas maquinarias, vasijas, instrumentos o implementos no adheridos al edificio o suelo, al ganado en pie, al dinero, bien en poder del mismo dueño o de otra persona, o depositado en alguna institución, los bonos, las acciones, certifi-

cados de créditos en sindicatos o sociedades no incorporadas, derechos de privilegio, marcas de fábrica, franquicias, concesiones y todas las demás materias y cosas susceptibles de ser propiedad privada, no comprendidas en la significación de la frase 'propiedad real', pero no comprenderá los créditos en cuentas corrientes, pagarés, ni otros créditos personales.''

Esto es contribución sobre la propiedad y no se refiere a franquicias o tiene disposición alguna acerca de arbitrios. Hay una subdivisión distinta del Código Político referente a arbitrios.

Varios artículos del Código Político anteriores al 317 contenidos en el Título IX de dicho código demuestran que se tenía en mente imponer contribuciones sobre la propiedad tangible existente en Puerto Rico. De acuerdo con el artículo 308, por ejemplo, se creó la junta permanente de Revisión e Igualamiento, la que se reúne para revisar la tasación de ''bienes muebles e inmuebles'' dispuesta por este título, o sea por el Título IX. La junta se compone en parte de personas versadas en el valor de la propiedad en Puerto Rico.

El artículo 316 se refiere a la tasación de bienes inmuebles de corporaciones domésticas. El artículo 317, que se discute, siguiendo el plan general, determina la tasación de propiedad mueble de las mismas corporaciones domésticas. En el artículo 320 se tasa a las corporaciones extranjeras. Dice la legislatura en tal artículo:

''. . . . *Disponiéndose, no obstante,* que para determinar el valor real y efectivo, a la sazón, del capital de tales corporaciones, sólo se tendrá en cuenta y valuará aquella parte del capital que tengan ellas empleado en la transacción de negocios en Puerto Rico; pero la cantidad de dicho capital no será, en ningún caso, menor que el valor de la propiedad inmueble y mueble ubicada en Puerto Rico perteneciente a tal corporación o compañía, incluyendo en la propiedad mueble todas las franquicias o concesiones otorgadas a dicha corporación o compañía con arreglo a las leyes de Puerto Rico.''

El mismo fin existe para saber o calcular la propiedad

mueble de corporaciones que son extranjeras para nosotros excepto en tener propiedad aquí o en hacer negocios en la Isla. El artículo 317 en inglés usa las palabras *"capital stock"* mientras que el artículo 320 dice *"capital,"* diferencia a que nos referiremos más tarde. El artículo 318, refiriéndose a corporaciones domésticas, dice así:

"Art. 318.—Si la tasación total del capital de cualquiera de dichas instituciones, corporaciones, o compañías, de conformidad con la relación que haya hecho el presidente, director u otro funcionario al frente de la misma, fuese aumentada por el Tesorero, éste notificará a dicho presidente, director u otra persona que esté al frente de dicha institución, corporación o compañía, la cual tendrá derecho de apelar de tal tasación ante la Junta de Revisión e Igualamiento, siempre que dicha institución, corporación o compañía presente una protesta ante la citada Junta, dentro de los quince días subsiguientes al envío de dicha notificación."

Creemos que este artículo asimismo tiene en mente imponer una contribución sobre la propiedad. Se refiere más o menos a propiedad tangible. El plan general del Título IX, cuando no se expresa claramente lo contrario, es imponer una contribución sobre bienes muebles e inmuebles pertenecientes a toda clase de personas, sean corporaciones o lo que fueren.

Independientemente de la redacción del artículo 317, el Tesorero confía principalmente en el artículo 322 del Código Político, artículo que también está contenido bajo el Título IX de dicho código. Este artículo dispone:

Art. 322—Las contribuciones insulares, municipales y locales, impuestas sobre acciones, capital y propiedad de instituciones, corporaciones, y compañías comprendidas dentro de las prescripciones de este título, y sobre acciones de bancos establecidos en Puerto Rico serán pagadas en la oficina del Tesorero, quien entregará, de acuerdo con la ley, la parte proporcional de dichas contribuciones locales y municipales vencidas, a los funcionarios de los distritos municipales o divisiones locales respectivas a quienes corresponda y las citadas instituciones, corporaciones y compañías quedan por el presente título autorizadas para retener las contribuciones corres-

pondientes sobre acciones del capital, de las ganancias o dividendos que se deriven a favor de los accionistas, o a cancelar una parte de dichas acciones, suficiente para pagar las citadas contribuciones. Las contribuciones insulares, municipales y locales impuestas a dichas instituciones, corporaciones y compañías serán devengadas por plazos semianuales, y todas las penalidades por falta de pago, la sujeción a embargo, incautación y venta de propiedad prescritas más adelante serán aplicables a dichas instituciones, corporaciones y compañías, en la misma forma que a individuos particulares.''

No vemos que dicho artículo sea algo más que una disposición general por la cual la contribución sobre el capital en acciones que ya ha sido tasado a los accionistas y que finalmente ha de salir de sus acciones individuales, por la ley deba ser pagada y cobrada por la corporación. El artículo 322 no determina en forma alguna cuál será la contribución de corporaciones. Respecto a las corporaciones domésticas la tasación y la forma de satisfacerla está especificada en el artículo 317. Por tanto, a menos que el artículo 317 por sí solo y por su propia fuerza imponga una contribución a los accionistas, el artículo 322 no puede prestar ayuda alguna al Tesorero. También llamamos la atención hacia el hecho de que es en el artículo 322 que se usa la palabra ''acciones'' (shares) mientras que en el artículo 317 no aparece esta palabra. Discutiremos algunas de las diferencias entre las palabras ''capital'' (capital stock) y ''capital en acciones'' (share capital).

[3] La apelante dice, y creemos que correctamente, que en Puerto Rico solamente se han impuesto contribuciones sobre acciones de bancos e instituciones bancarias.

Consideraremos nuevamente el artículo 317. Si una tasación de acciones debe considerarse como una tasación contra los accionistas individualmente o contra la corporación, debe determinarse principalmente por los hechos del caso en particular. Cooley sobre Tasación, párrafo 981, p. 1971, 4ta. Edición; *Home Ins. Co. v. New York*, 134 U. S. 594; *Van Allen v. The Assessor*, 3 Wall. 573; *Powers v. Detroit & Grand Haven Railway Co.*, 201 U. S. 543; *Delaware, etc.*,

*R. R. Co.* v. *Penn.,* 198 U. S. 341; *Des Moines Nat. Bank* v. *Fairweather,* 263 U. S. 103; *Adams Express Co.* v. *Kentucky,* 166 U. S. 171; *C. O. & G. R. Co.* v. *Harrison,* 235 U. S. 292; *Iowa Loan & Trust Co.* v. *Fairweather,* 252 Fed. 608; *In re. Oklahoma National Life Ins. Co.,* 173 Pac. 376; *In re. Assessment of Amazon Fire Ins. Co.,* 173 Pac. 655; *Junior Trust Co.* v. *Coleman,* 126 N. Y. 443, 440, 27 N. E. 818, 12 L.R.A. 762, y otros casos citados en la página 23 del alegato de la apelante.

Que las palabras *"capital"* y *"capital stock"* se usan indistintamente y que no deben considerarse como capital en acciones, o como una contribución a los accionistas, se desprende de los siguientes casos: *Home Savings Bank* v. *Des Moines,* 205 U. S. 503; *Powers* v. *Detroit & Grand Haven Railway Co.,* 201 U. S. 560; *First National Bank* v. *Adams,* 258 U. S. 365; *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664; *Bank of Commerce* v. *New York,* 2 Black 620; *Delaware, etc. R. R. Co.* v. *Penn.,* 198 U. S. 354; *People ex rel. Lackawanna Transit Co.* v. *Knight,* 75 App. Div. New York, 164, y casos. 9 C. J. 1278, nota 36 (*a*). Igualmente algunos de los casos citados en el párrafo anterior.

Los casos que anteceden resuelven la cuestión de que las palabras *"capital"* o *"capital stock"* usadas absolutamente en un estatuto, y no apareciendo una intención contraria, deben interpretarse como que se refieren al capital de la compañía y no al de los accionistas.

*Delaware, etc., R. R. Co.* v. *Pennsylvania, supra,* particularmente es aplicable. Dijo la corte, "La Corte Suprema de Pensilvania ha resuelto que una contribución sobre el valor del capital (*capital stock*) es una contribución sobre la propiedad y capital activo de la corporación que expide tales acciones (*stock*) citando casos. Esta corte también ha resuelto que una contribución sobre el valor del capital (capital stock) de una corporación es una contribución sobre la propiedad en que se ha invertido tal capital y en su

consecuencia que no se pueden imponer contribuciones sobre propiedad que en otra forma está exenta (citando casos).''

La apelante, como ya hemos indicado, dice que cuando la Legislatura ha querido imponer una contribución a los accionistas lo ha hecho así claramente, como en el caso de los bancos e instituciones bancarias. La apelante llama la atención al hecho de que el artículo 317 y otros artículos del Código Político, según fueron redactados originalmente, no excluían las instituciones bancarias de la aplicación de las leyes a las corporaciones domésticas, pero que en 1904 la legislatura claramente mostró su intención de que las contribuciones de tales bancos e instituciones bancarias debían ser impuestas separada y distintamente, o sea, imponiendo una contribución a los accionistas.

Las decisiones también tienden a demostrar que una contribución sobre el valor del capital (*capital stock*) es generalmente una contribución sobre la propiedad y no debe interpretarse como una franquicia o un arbitrio.

Las únicas palabras en el artículo 317 que posiblemente podrían demostrar la intención de imponer contribución al capital en acciones de los accionistas son las palabras ''*capital stock*''. Pero anteriormente en el mismo artículo la legislatura había dicho: ''el valor efectivo actual del capital de las citadas corporaciones se fijará,'' etc. Las palabras ''*capital*'' y ''*capital stock*'' también se usan indistintamente en ese artículo. En el artículo 318 ya citado la legislatura nuevamente habla de la tasación total del *capital*.

La palabra ''*capital*'' frecuentemente ha sido definida, pero siempre se ha usado para designar la propiedad de una corporación. Nota a *Foster* v. *Stevens,* 13 L.R.A. 166; 9 Corpus Juris 1278.

[4, 5] En el caso de *Home Savings Bank* v. *Des Moines, supra,* los bancos eran corporaciones creadas por el Estado de Iowa. La corte dijo que tenía que investigar si la ley en realidad imponía una contribución sobre las acciones

como propiedad de sus dueños o si solamente adoptaba el valor de tales acciones como una medida de tasación de la propiedad de la corporación y en esa forma tasaba la propiedad misma; que podía haber una contribución sobre las acciones de la corporación que son propiedad distinta a aquella que posee la corporación y que tienen un dueño distinto, sin hacer una rebaja por la exención debida a la propiedad de la corporación misma, mientras que si la contribución era sobre la propiedad de la corporación, todas las exenciones a que tenía derecho tenían que hacerse; que la ley no imponía ninguna obligación al accionista, y que las contribuciones, por tanto, no tenían que ser pagadas por las corporaciones como agentes de sus accionistas sino como su propia deuda, y que a menos que se supusiera que la ley les exigía que pagaran contribuciones sobre propiedad que no poseían, las contribuciones deberían considerarse como contribuciones sobre la propiedad de la corporación. La corte dijo: ''En la tasación para imponer contribuciones se requiere al tasador que 'tome en consideración el capital, el exceso (*surplus*) y las ganancias no divididas,' y debe suministrársele una 'declaración jurada referente a todas las materias estipuladas en el artículo anterior,' lo que se verá que es una declaración detallada mostrando el activo del banco.'' La corte también dijo, después de revisar los casos:

''El presente caso no puede distinguirse en principio de estos casos. En el primer caso la contribución era sobre el capital por su valor real; en el segundo caso sobre el montante del capital y las ganancias en exceso, y en el presente caso sobre el capital en acciones, tomando en consideración el capital, el exceso (*surplus*) y las ganancias no divididas. Sería difícil para la mente más ingeniosa y para el escritor más consumado exponer distinción alguna entre estas tres leyes, excepto por la forma en que todas tienden al mismo fin—la tasación de propiedad del banco. La más ligera ocultación suministrada por la omisión de la propiedad *eo nomine* no es suficiente para ocultar el hecho de que en efecto es sobre la propiedad que se imponen las contribuciones. Si incluída en dicha propiedad

se descubre que hay alguna que tiene derecho a inmunidad de acuerdo con la ley federal, es el deber de esta corte ver que se respete la inmunidad.''

La Corte Suprema reconoció el principio de que cuando la contribución se hace recaer sobre los accionistas más bien que sobre la propiedad de la corporación exenta de contribuciones, no necesita tomarse en consideración. En el caso en que se resolvió originalmente este punto tres jueces disintieron fundándose en que el imponer las contribuciones a los accionistas realmente recaía sobre la corporación. En otras palabras, los jueces disidentes creyeron que en realidad se imponían contribuciones indirectamente sobre propiedad de la corporación. La corte también dijo: ''Pero la distinción entre una contribución a los accionistas y una sobre la propiedad de la corporación, aunque ha sido establecida por encima de las opiniones disidentes, ha llegado a ser intrincadamente confundida con todos los sistemas de contribuciones y no puede ser desatendida sin formar de ellas una confusión, lo que equivaldría poco menos que a un caos.''

Por tanto, nos parece evidente que la Corte Suprema de los Estados Unidos ha decidido directamente que cuando la legislatura intenta que una contribución recaiga sobre los accionistas más bien que sobre la corporación, deben usarse palabras específicas y expresas que permitan poner en práctica tal intención. Es cierto que en el caso de *Home Savings Bank, supra,* la Corte Suprema dijo que debe tenerse en cuenta la substancia y efecto de un estatuto, pero sin embargo, teniendo en consideración las palabras aquí usadas no podemos ver que el artículo 317 pueda tener una interpretación distinta a la que dió la Corte Suprema de los Estados Unidos a los estatutos cuando el Estado de Iowa trataba de imponer contribuciones a sus bancos.

Cuando un estado desea imponer una contribución tanto a una corporación como a sus accionistas, la intención debe ser claramente manifestada. De lo contrario las cortes in-

terpretarán que el estatuto significa una de dos cosas, bien una contribución a la corporación o una contribución a los accionistas. No se interpretará que los estatutos autorizan que se impongan contribuciones tanto a la propiedad de corporaciones como a los accionistas, a menos que sea clara la intención de hacerlo así. *Tennessee* v. *Wentworth,* 117 U. S. 129, 134; *New Orleans* v. *Houston,* 119 U. S. 265, 277; *Loring* v. *Beverly,* 222 Mass. 331; *Board, etc.,* v. *Ryan,* 232 Pac. 834, y casos; 26 L.R.A. 158. En el primero de estos casos se discutía sobre los bancos nacionales y la corte resolvió que el *capital (capital stock)* (bastardilla nuestra) invertido en valores de los Estados Unidos estaba exento pero que podían imponerse contribuciones sobre acciones en poder de accionista individuales. Se reconocieron cuatro elementos que pueden ser tasados, a saber: primero, franquicias; segundo, capital en poder de la corporación; tercero, propiedad de la corporación; y cuarto, acciones del capital en poder de accionistas. Cada uno de éstos era bajo ciertas circunstancias un elemento apropiado de tasación, y un estado puede, bajo ciertas circunstancias concebibles, imponer doble contribución, pero la intención de imponer una contribución doble debe ser clara. *A fortiori* toda presunción es contraria a la intención de la legislatura de dar al Tesorero el derecho de elegir la forma de tasación. En el caso de *Loring* v. *Beverly, supra,* la corte dijo que las acciones eran propiedad distinta al capital, a las franquicias o a otra propiedad de la corporación. "La tasación," continuaba diciendo la opinión, "sobre uno o todos estos elementos de propiedad no impide la tasación sobre las acciones como propiedad del poseedor de las mismas en su domicilio. Si bien posiblemente ambas clases de propiedad podrían tasarse en la misma jurisdicción, tal intención de parte de la legislatura nunca debe presumirse en ausencia de palabras inequívocas a ese fin.

La contribución no puede ser una contribución sobre la corporación o sobre los accionistas a discreción del Teso-

rero. El manifestar que el Tesorero a su opción puede elegir para imponer una contribución si lo hará sobre los accionistas o sobre la corporación, sería delegar en él poderes legislativos. En el caso de *El Pueblo* v. *Neagle,* 21 D.P.R. 356, revisamos las autoridades para demostrar que podían delegarse al Tesorero ciertas facultades administrativas. Dimos énfasis al hecho de que el Tesorero en ciertos casos podía suplir detalles, pero la legislatura no tiene derecho a delegar en el Tesorero el derecho de decir sobre quién recaerá la contribución. Esta es claramente una facultad legislativa. Que poderes legislativos no pueden delegarse es la jurisprudencia uniforme de las cortes. *El Pueblo* v. *Neagle, supra,* con los casos allí citados y particularmente el de *Field* v. *Clark,* 143 U. S. 649; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 164; *State* v. *Elain,* 39 L.R.A. (N. S.) 686; *James* v. *U. S. Fidelity, etc., Co.,* 113 Ky. 229, 117 S. W. 406; 37 Cyc. 724 *et seq.;* 26 R.C.L. 30. Por lo tanto debe aceptarse una interpretación del estatuto que no deje a opción del tesorero el elegir un modo de tasar o valorar que en un caso exentúe cierta propiedad y en otro caso no.

Más o menos en el mismo sentido, según indica la apelante, el artículo 2 del Acta Orgánica en su párrafo sin numerar 22, dispone que las leyes para la imposición de contribuciones en Puerto Rico serán uniformes. Es evidente que si el Tesorero puede en un caso fijar una contribución a los accionistas y en otro caso una contribución a la corporación misma, las leyes para la imposición de contribuciones en Puerto Rico no serían uniformes. Sin embargo, aparentemente es la contención del Tesorero que bajo el artículo 317 él tiene derecho a imponer una contribución sobre la propiedad o una contribución a los accionistas.

Esta contribución no puede sostenerse como una franquicia de incorporación. Tal intención no aparece en ningún sitio del Código Político. En todos los casos que hemos visto la intención de imponer contribuciones sobre una

franquicia se manifestaba claramente, bien por la constitución o por los estatutos de determinado estado. Leyendo a la ligera algunas de las decisiones de Massachusetts, por ejemplo, parecería que las contribuciones sobre una franquicia son medidas hasta cierto punto en la forma expuesta en el artículo 317 del Código Político, pero nos imaginamos que en Massachusetts o bien los estatutos directamente fijan una contribución sobre las franquicias o la constitución de ese estado hace necesario que se dé tal interpretación a la actuación de la legislatura. *Manufacturer's Ins. Co.* v. *Loud,* 96 A. D. 715, 99 Mass. 146; *A. J. Tower Co.* v. *Comm.,* 223 Mass. 373; *Loring* v. *Beverly,* 222 Mass. 331; *Murray* v. *Berkshire Life Ins. Co.,* 104 Mass. 586; *National Bank of Commerce* v. *New Bedford,* 155 Mass. 316; *Tremont & Suffolk Mills* v. *Lowell,* 178 Mass. 471, y casos citados. En tanto en cuanto hemos podido averiguar ni Massachusetts ni ningún otro estado tiene un estatuto igual al nuestro, en el cual se manifiesta tan claramente la intención de imponer contribuciones sobre "bienes muebles." Además del hecho de que nos parece que no hay intención de imponer contribuciones a las franquicias, el Tesorero y sus asesores también lo han entendido así y a una interpretación contemporánea por las autoridades administrativas ha de dársele algún valor.

Cuándo debe considerarse la tasación como una franquicia y no como una contribución sobre la propiedad, fué discutido por la Corte Suprema de los Estados Unidos en una serie de casos, *Society for Savings* v. *Coite,* 6 Wall. 594; *Provident Institutions* v. *Massachusetts,* 6 Wall. 611; *Hamilton Company* v. *Massachusetts,* 6 Wall 632, pero no estaba envuelta allí ninguna tasación de propiedad, ni se estaba considerando un estatuto como el nuestro. En el caso de *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 576, se demostró que la distinción descansaba no en una referencia necesaria a propiedad sino más bien en el privilegio de hacer negocio, cubierto particularmente en Puerto Rico por

la llamada ley de patentes. Los casos de *Flint* v. *Stone Tracy Co.*, 220 U. S. 164; *Kansas City* v. *Kansas,* 240 U. S. 232; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 83, demuestran cuán diferente procede una legislatura cuando desea imponer una contribución sobre las franquicias.

El Tesorero descansa hasta cierto punto en nuestra opinión en el caso de *France & N. Y. Medicine Co.* v. *Reily et al.,* 31 D.P.R. 650, *supra.* Los hechos en ese caso eran enteramente distintos, y quizás el caso pueda distinguirse. Sin embargo, pueda o nó hacerse tal distinción, nos creemos obligados a seguir los razonamientos y la jurisprudencia citada.

La apelante descansa en cierto modo en los casos de *Union Central Life Ins. Co.* v. *Gromer,* 19 D.P.R. 900, y *Fajardo Sugar Co.* v. *Richardson,* 22 D.P.R. 311. Hay algo en estas decisiones que favorece a la apelante, pero la contribución era a corporaciones extranjeras y se siguió un método de imponer contribuciones sobre la propiedad. El artículo 317 no era objeto de discusión.

Llegamos a la conclusión de que ya se imponga la contribución sobre el capital, sobre el capital en acciones, o sobre la propiedad material la contribución resultante es sobre la propiedad de la corporación.

Al llegar a esta decisión hemos tenido también el beneficio en un caso similar de los razonamientos y conclusiones del Juez Sr. Wells, de la Corte de Distrito de los Estados Unidos para Puerto Rico, en el caso de *Fajardo Sugar Co.* v. *Juan G. Gallardo como Tesorero de P. R.,* Equidad No. 1295.

Como ésta era una contribución dirigida contra el capital de la corporación, la propiedad que exime la ley no debe ser incluída. Convenimos con la apelante en que tiene derecho a que se le devuelva la cantidad de $1,227.93, ya que en este caso sólo podía imponerse contribución sobre el efectivo en caja.

*La sentencia debe ser revocada.*

El Juez Presidente Señor del Toro y el Juez Asociado Señor Franco Soto, disintieron.

### OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. DEL TORO.

Opino que la sentencia apelada debe confirmarse porque a mi juicio el procedimiento seguido por el Tesorero y ratificado por la Junta de Revisión e Igualamiento es correcto. La tasación se basó en los datos proporcionados por la misma corporación. El Tesorero no cargó contribución alguna a los bienes exentos por ministerio de la ley. Tomó en consideración el valor de las acciones que es algo independiente susceptible de tasación de acuerdo con una interpretación racional del artículo 317 del Código Político.

### OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. FRANCO SOTO.

Leyes sobre contribuciones de naturaleza análoga a la que interpretamos en este pleito, han sido objeto de fuerte debate y litigación en la mayor parte de los Estados y generalmente la Corte Suprema de los Estados Unidos ha tenido que decir la última palabra y aún sus decisiones no han sido unánimes. No es extraño pues nuestra discrepancia, creyendo sostener sin embargo la verdadera interpretación de nuestro estatuto, que es de origen americano, conforme con la intención y propósito que tuvo la Legislatura al implantarlo en Puerto Rico.

La cuestión fundamental en este caso gira alrededor de lo prescrito en los artículos 317 y 322 del Código Político que fué aprobado en marzo 1 de 1902, y comprendidos en su Título IX con el nombre de "rentas." Comp. 1911, página 577. La ley fué conocida bajo el nombre de *"Bill Hollander"*. Desde entonces se viene aplicando y con excepción del caso de *The France & N. Y. Medicine Co.* v. *Reily et al.;* 31 D.P.R. 650, de fecha más reciente, nada se había presentado que envolviera directamente la aplicación de los artículos citados en relación con las corporaciones domésticas.

La apelante, como corporación doméstica, presentó al Tesorero de Puerto Rico con fines contributivos y para el año fiscal de 1922–23, una planilla conteniendo la declaración de sus bienes. Se declaró en ella el número de acciones, dándole dicha apelante un valor a la par de $100 cada una ascendentes en total a $60,000, las ganancias no divididas que montaban a $6,190 y además los particulares de los siguientes bienes:

| | |
|---|---:|
| Efectivo en caja | $6, 448. 66 |
| Bonos de la Libertad | 90, 537. 26 |
| Acciones de corporaciones | 11, 850. 00 |
| Créditos hipotecarios | 16, 000. 00 |
| Notas a cobrar y otros créditos | 14, 409. 65 |
| Total | $139, 245. 57 |

No existiendo inmuebles que deducir, el Tesorero simplemente sometió únicamente a tasación el agregado de las acciones y las ganancias no divididas de la corporación montantes a $66,190, e impuso una contribución de $1,323.80, cuya suma se pagó bajo protesta, exigiéndose su devolución por este pleito.

La corte inferior declaró sin lugar la demanda y fundó su sentencia únicamente en el caso de *The France & N. Y. Medicine Co.* v. *Reily et al.*, 31 D.P.R. 650. En dicho caso el Tesorero había impuesto a la demandante por ser una corporación doméstica, cierta contribución sobre el capital pagado y ganancias no divididas, pero la demandante alegaba que el Tesorero debió imponer la contribución sobre la propiedad tangible existente en Puerto Rico, y en tal sentido únicamente era objeto de contribución el valor de un automóvil que poseía la corporación en esta Isla; alegándose además que el sitio principal de sus negocios, así como de los bienes muebles e inmuebles, radicaba fuera de Puerto Rico.

Aunque en el presente caso la cuestión envuelta es enteramente distinta, sin embargo, el artículo 317 del Código Político en virtud del cual el Tesorero ha funcionado en

cada caso imponiendo la contribución, fué objeto de algún estudio y como principios generales dijimos lo siguiente:

"Las corporaciones con motivo de su constitución especial están sujetas a un gravamen adicional en el que entran para la tasación de sus bienes elementos que no existen tratándose de individuos y los cuales pueden en efecto ser objeto de tasación sin dar lugar a discriminación alguna en el sentido lugar.

" 'El poder del Estado para imponer contribución a los elementos de valor que pueden ser objeto de contribución indicados en el párrafo anterior, no se limita a elegir un solo elemento con exclusión de los demás. Indudablemente que los elementos mismos representan en mayor o menor grado los mismos principios fundamentales del activo de la corporación. Cada uno de estos elementos es, sin embargo, bajo ciertas circunstancias, materia adecuada de contribución, y está sin duda dentro del poder del Estado cuando éste no se encuentra restringido por limitaciones constitucionales, el fijar contribuciones a ellos de modo que sujeta a la corporación o a los accionistas a lo que en efecto equivale a una doble tasación. Siendo diferentes los elementos mismos puede imponérseles contribución separadamente aunque el gravamen se impone sobre la misma propiedad en cada caso.' 26 R. C. L. 157 y 158.

"Aceptamos que el artículo 317 del Código Político nominalmente habla de la contribución sobre la propiedad de las corporaciones, o lo que es lo mismo, sobre el tercer elemento de que hablamos más arriba, la propiedad de la corporación (corporate property), pero dado el método empleado por nuestro Código Político en dicho artículo 317 de tasar la propiedad personal mueble refiriéndose a la intangible, indirectamente, pero de una manera expresa, la tasación alcanza el capital de la corporación (capital stock).

" ' 'Hay muchos y diferentes métodos de imponer contribución a la propiedad de las corporaciones. En general los bienes inmuebles y la propiedad personal tangible de tal naturaleza que tiene un sitio fijo en determinado lugar está sujeta a la tasación local donde está situada, y se alcanza el resto de la propiedad de la corporación indirectamente por medio de una contribución sobre el capital o la franquicia. Los bienes intangibles de una corporación pueden, sin embargo, quedar sujetos a una contribución sobre la propiedad, y ser valorada rebajando el valor en tasación de la propiedad tangible de la corporación del valor total de su capital y bonos.' 26 R.C.L. 178.

"De manera que se puede entender fácilmente que el método empleado por nuestro sistema de contribución para la tasación de corporaciones domésticas comprende propiedad inmueble y mueble tangible y la diferencia entre estas propiedades y el valor del capital y bonos más el sobrante y ganancias no divididas, representa la propiedad mueble intangible que debe someterse a tasación, por lo que se ve claramente, y de un modo expreso, que la contribución alcanza indirectamente al capital de la corporación (capital stock).

" 'En algunas jurisdicciones el valor de la propiedad personal, tangible e intangible, de una corporación se determina rebajando el costo de los bienes inmuebles pertenecientes a la corporación del total del capital social.' 26 R.C.L. 179.

"La apelante insiste, sin embargo, que como se trata exclusivamente de contribuciones impuestas sobre la propiedad de corporaciones domésticas, que es bien claro que cuando sus bienes están fuera de la jurisdicción, permanentemente situados en otro Estado y allí invertidos en relación con sus negocios, no es legal la contribución a dichos bienes o a cualquier cosa que los pretenda substituir o representar. Pero estas conclusiones de la apelante son tan absolutas que no responden a las disposiciones del Código Político que hemos examinado ni están en armonía con la jurisprudencia aplicable en tales casos.

"Parece que el sistema de tasación de las corporaciones domésticas en la forma que hemos visto y que prescribe el artículo 317 del Código Político, impone a primera vista una contribución sobre la propiedad, pero realmente alcanza al capital de la sociedad en el remanente de la propiedad mueble intangible al deducir de ésta la propiedad real y la personal tangible. En tal caso parece que no se trata de una contribución sobre la propiedad propiamente dicha de la corporación sino más bien de un arbitrio (excise). En este sentido se hace importante saber en determinados sistemas de tasación si es una u otra cosa lo que se impone, porque si la contribución es solamente un arbitrio (excise) el capital de la corporación (capital stock) es meramente la medida de la tasación y tanto la forma en que el capital esté invertido, así como la localización o *situs* de la propiedad, es inmaterial; pero por el contrario, si lo que se impone es una contribución sobre la propiedad, el capital de la corporación no puede ser tasado sin una deducción de la propiedad situada en otro Estado. Véase 26 R. C. L. 171."

La parte apelante sostiene en el presente caso, sin embargo, y con ella la mayoría de esta Corte Suprema, que

el artículo 317 del Código Político impone una contribución sobre la propiedad de la corporación, debiendo haberse hecho la deducción de todos los bienes exentos de contribución por ministerio de la ley.

Se aduce como argumento aquiles por la apelante y se adopta por la mayoría que el artículo 317 está comprendido en el Capítulo 1 bajo el epígrafe de "Tasación de la Propiedad" de la ley de rentas (Comp. 1911, p. 580) y que el vocablo "capital" que se usa en la ley no significa las acciones (*shares of stock*) en que está dividido el capital pagado de la corporación, sino que se refiere a todos sus bienes.

Podemos disponer de la primera parte del argumento diciendo que si la mera inclusión del artículo 317 en el capítulo que trata de la "Tasación de la propiedad" fuera suficiente para definir su naturaleza y considerar que por eso sólo impone una contribución sobre la propiedad de la corporación y no en la forma de un arbitrio (*excise*), ¿cómo se explicaría entonces la inclusión en el mismo capítulo del artículo 320 que impone una contribución a los bancos sobre el capital en acciones en poder de los accionistas? El apelante parece admitir que este último artículo establece un arbitrio (*excise*) pero no explica ni se sorprende de que el legislador en ese particular haya incluído tal disposición imponiendo una contribución con el carácter de una franquicia en el capítulo primero que trata de la tasación de la propiedad. Tampoco tendría explicación la inclusión en el mismo capítulo 1 sobre "tasación de la propiedad" del artículo 355 que prescribe en concepto de contribución "de franquicias" * * * cierto impuesto a determinadas corporaciones.

En nuestro concepto el legislador no ha hecho nada anormal al incluir el artículo 317 en el Título IX, Capítulo I del Código Político. Cualquiera que sea el nombre que se le dé al impuesto hay siempre un método de valuación. "Al considerarse la valuación del *capital de una corporación*

(capital stock), es necesario averiguar en primer lugar si
ese término, según está usado en una ley de contribución,
se refiere meramente al capital en acciones ya emitido o al
total de la propiedad de la corporación, por ejemplo, su
capital. * * * Otro método bajo otros estatutos es ta-
sar la propiedad de acuerdo con el valor actual o del mer-
cado del número total de acciones que constituyen el capi-
tal nominal.'' Cooley, Vol. 2, p. 1760–61. No encontramos
después de esto la significación especial que se quiere dar
a las palabras *''value''* y *''taxation''* para determinar el
carácter del impuesto.

No es más importante por consiguiente la segunda parte
del argumento en que refiriéndose la apelante al sentido
que debe dársele a la palabra *''capital''* en su alegato dice:
''Imponiendo el capítulo primero del título nono del Có-
digo Político una contribución sobre la propiedad, nosotros
inferimos que la palabra 'capital' está usada en este caso
como comprendiendo toda la propiedad perteneciente a la
corporación.'' El nombre no hace la cosa. Todo depende
de los términos en que aparece redactado el artículo 317.
''Una contribución al capital de una corporación (capital
stock) puede ser claramente o una contribución sobre la
propiedad o un arbitrio (excise), y la fraseología del esta-
tuto bajo el cual se impone puede determinar en un caso
en particular a qué clasificación pertenece. Una contribu-
ción sobre el capital es generalmente considerada como un
arbitrio (excise) más que como una contribución sobre la
propiedad, aunque se ha resuelto lo contrario en algunos
estados.'' Cooley, vol. 2, p. 1707–8.

Massachusetts es un ejemplo claro en donde la contribu-
ción se determina e impone en la forma que se establece
claramente por el artículo 317. El mismo autor dice: ''En
Massachusetts una contribución determinada por el exceso
del valor en el mercado de las acciones de la corporación
(capital stock) sobre la propiedad de otro modo sujeta a
impuesto, y otra determinada por el valor total de las ac-

ciones de la corporación "(corporate shares) se ha resuelto que son más bien arbitrios que impuestos a la propiedad." Cooley, vol. 2, 1708-9. Y como materia ilustrativa en relación con los dos modos en que puede imponerse la contribución a las corporaciones, en la nota 99, p. 1708, Cooley hace la siguiente cita:

"Si una contribución sobre el capital *eo nomine* de corporaciones (capital stock) hace las acciones objeto directo de la contribución y se usa el término 'capital de la corporación' (capital stock) como significando toda la propiedad y el activo de la corporación, tanto tangible como intangible, se resuelve a veces que la contribución impuesta es una contribución sobre la propiedad y no un arbitrio; pero si el capital de las corporaciones (capital stock) no es *per se* el objeto de la contribución, sino que es el método seguido con el fin de fijar el montante de la contribución de la corporación, el impuesto es entonces un arbitrio y no una contribución sobre la propiedad. Esta es la conclusión a que ha llegado por lo menos un comentarista. Véase la nota en 58 L. R. A. pág. 618, que dice que ésta es la conclusión a que ha llegado el autor. Sin embargo, en cuanto a la primera de estas dos proposiciones parece que hay algunas opiniones disidentes. Cuando la contribución sobre el capital de las corporaciones se fija por el valor total de las acciones y no por el valor de la propiedad de la corporación, se ha resuelto también generalmente que es un arbitrio y no una contribución sobre la propiedad. Hamilton Mfg. Co. v. Massachusetts, 6 Wall. (U. S.) 632, 18 L. Ed. 904."

En el estado de Nueva York encontramos la diferencia de contribuciones que deben considerarse sobre la propiedad o como un arbitrio (*excise*). En 1857 se discutió una ley sobre contribuciones exigibles por las autoridades locales

\* \* \* "disponiendo que el capital (capital stock) de toda compañía sujeta al pago de contribuciones debía ser tasado por su valor real. y en la misma forma que cualquier otra propiedad mueble o inmueble en el mismo condado. Se resolvió que esta ley imponía una contribución sobre las colaterales en que se había invertido el capital y que una contribución impuesta de acuerdo con la misma sobre el capital (capital stock) de un banco era nula hasta el montante del capital invertido en obligaciones del gobierno exentas de contribución. New York ex real; Bank of Commerce v. New York City & County, 2 Black, 620, 17 L. Ed. 451."

"Pero la ley de contribuciones del estado de Nueva York sobre las corporaciones de acuerdo con su capital (capital stock) impone una contribución sobre la franquicia o negocio, y no una sobre la propiedad. Repetimos que es innecesario citar las autoridades que establecen esta proposición fuera de toda duda. Y además debe insistirse, a pesar de algunas decisiones que serán discutidas, que al fijarse esta contribución no es afectada en absoluto por la circunstancia de que todo el capital de la corporación o parte del mismo sujeto a la misma haya sido invertido en derechos de autor (copyrights), patentes o derechos de patentes, siempre que tal corporación esté en otro sentido dentro del estatuto.

"El caso de People v. Home Ins. Co., 92 N. Y. 328, confirmado al ser traído con un *writ of error* en 119 U. S. 129, 30 L. Ed. 350, 8 Sup. Ct. Rept. 1385, y al ser discutido nuevamente en 134 U. S. 594, 33 L. Ed. 1025, 10 Sup. Ct. Rept. 593, resolvió que la inversión en bonos de los Estados Unidos no daba derecho a la corporación a que se le hiciera una rebaja en la contribución, porque era enteramente impertinente cuál era la naturaleza de la propiedad representada por el capital de la corporación (capital stock), ya que era una forma de medir y no el objeto de la contribución, y es enteramente concluyente sobre esa materia. Ese caso está en armonía con con todas las autoridades, y fuera de toda crítica una vez admitido que el estatuto impone un derecho de franquicia y no una contribución sobre la propiedad."

"Por otra parte, el estatuto de Connecticut, que imponía una contribución de un determinado tanto por ciento sobre el capital en efectivo de corporaciones domésticas en cierta fecha dada, se resolvió que imponía una franquicia y no una contribución sobre la propiedad, y que por consiguiente no había derecho a rebaja alguna por el montante del capital que se hubiere invertido en bonos de los Estados Unidos. Coite v. Connecticut Mut. L. Ins. Co., 36 Conn. 513."

"La Corte de apelaciones de Kentucky, al interpretar un estatuto de aquel estado que requería se hiciera una tabla de valuación y tasación de una declaración jurada que debía ser suministrada por toda corporación y de cualquier otra prueba que pudiera obtenerse para fijar el valor del capital de toda corporación doméstica, y que del montante así fijádose se dedujera el valor en que estuviere tasada toda la propiedad tangible de la corporación en dicho estado o en los condados donde estuvieren situados, y declarando que el remanente así hallado era el valor de la franquicia de incorporación sujeta a contribución, resolvió que al usar las palabras 'capital stock' la

legislatura tuvo en mente incluir toda propiedad, real o personal, tangible o intangible, todo el activo y la franquicia, abarcándolos como si fuesen un todo y, deducir la propiedad tangible sobre la cual ya se había impuesto contribución, tratar el balance neto como el valor para la imposición de la contribución sobre la franquicia. Henderson Bridge Co. v. Com., 99 Ky. 623, 29 L. R. A. 73, 31, S. W. 486. Confirmado en 166 U. S. 150, 41 L. Ed. 953, 17 Sup. Ct. Rep. 532.''

(58 L. R. A. 529–540–565–568.)

''Cuando se trata del capital de corporaciones (capital stock) el asunto es más complicado y las decisiones varían más. Que en un sentido el capital de corporaciones es propiedad, no será negado por nadie; pero si una contribución sobre el capital de corporaciones (capital stock) equivale a una contribución sobre la propiedad en general es una cuestión enteramente distinta. En varias jurisdicciones se ha resuelto que el capital de las corporaciones (capital stock) prácticamente representa su propiedad y que ambas cosas son para todos los fines términos que se usan indistintamente. En lo que se refiere a la contribución sobre el capital de corporaciones (capital stock) en general, otras jurisdicciones, sin embargo, han resuelto y las cortes federales han confirmado sus decisiones, que ésta no es una contribución sobre la propiedad.'' Seligman, Essays on Taxation (8th Edition) página 233.

El artículo 317 del Código Político está redactado así:

''Art. 317.—La propiedad mueble de instituciones, corporaciones y compañías incorporadas con arreglo a las leyes de Puerto Rico fuera de las instituciones bancarias con capital en acciones deberá tasarse como perteneciendo a tales instituciones, corporaciones y compañías por el Tesorero de Puerto Rico, en la forma que este artículo provee. El valor efectivo actual del capital de las citadas corporaciones, se fijará por el Tesorero de Puerto Rico de conformidad con la declaración jurada de los presidentes, directores u otros funcionarios al frente de tales corporaciones, como se requiere por el artículo 319, o basándolo en cualquier otro informe fidedigno que el Tesorero tenga o adquiera, y el valor efectivo actual no será en ningún caso menos que el valor del capital y bonos más el sobrante y ganancias no divididas de dichas instituciones, corporaciones y compañías; ni será menor que el valor en el mercado de los bienes inmuebles y muebles de dichas instituciones, corporaciones y compañías, incluyendo en los bienes muebles todos los derechos. franquicias y concesiones. De la tasación obtenida en esta forma se deducirá el valor

total de la propiedad inmueble de dichas corporaciones, que resulte de la tasación verificada de acuerdo con las disposiciones del artículo 316; y el resto será considerado como que representa la propiedad mueble de dichas corporaciones que ha de someterse a contribución.'' Comp. 1911, página 590.

El estatuto prescribe la forma en que se ha de valuar la propiedad mueble de las corporaciones domésticas.   El *capital stock* se determina más bien por el valor total de las acciones que por el valor de la propiedad de la corporación. El capital de la corporación (*capital stock*) no es por consiguiente, la materia *per se* sujeta a contribución sino que es el *standard* tomado a los efectos de fijar la suma de una contribución impuesta a la corporación, y en su finalidad es un arbitrio (*excise*).   La prueba evidente para inferir de los términos de la ley que fué aquélla la intención de la legislatura es que se toma como base de la valuación el *capital stock* en su sentido estricto de las acciones para distinguirlo del montante o valor de la propiedad de la corporación.   5 Fletcher, Corporations, p. 3413.

La razón de' tal distinción puede verse más claramente cuando se pone otro límite en la última parte del artículo 317 en el sentido de que la medida del capital en acciones no será menor tampoco que el valor en el mercado de los bienes inmuebles y muebles.   Sería difícil entender este extremo del artículo 317, *supra,* si no se presupone un término de comparación para fijar aquel límite, y que no es otro que el valor de las acciones, bonos y ganancias no divididas como más antes indica dicho artículo.   De otro modo hubiera sido bien fácil al legislador si su intención era imponer la contribución sobre la propiedad de las corporaciones, referirse simplemente a su propiedad corporativa o activo (*assets*) de las mismas.

Parece claro además que si en el método de valuación que sigue el artículo 317 sobre la propiedad mueble, la sóla deducción' que se permite es la de la propiedad inmueble, lo que sin duda se hace para evitar una doble contribución,

no existiendo tal propiedad en el activo de una corporación, únicamente queda sujeto a tasación el valor actual de las acciones y bonos, más las ganancias no divididas. Y ésta es la situación de la apelante. El Tesorero, no como una opción, sino que necesariamente siguió el método que prescribe el artículo 317 imponiendo la contribución en la forma en que lo hizo. En este punto no debemos perder de vista el artículo 322 del Código Político que aclara mejor la intención de la legislatura, y que dice:

"Art. 322.—Las contribuciones insulares, municipales y locales, impuestas sobre acciones, capital y propiedad de instituciones, corporaciones y compañías comprendidas dentro de las prescripciones de este título, y sobre acciones de bancos establecidos en Puerto Rico serán pagadas en la oficina del Tesorero, quien entregará, de acuerdo con la ley, la parte proporcional de dichas contribuciones locales y municipales vencidas, a los funcionarios de los distritos municipales o divisiones locales respectivas a quienes corresponda y las citadas instituciones, corporaciones y compañías quedan por el presente título autorizados para retener las contribuciones correspondientes sobre acciones del capital, de las ganancias o dividendos que se deriven a favor de los accionistas, o a cancelar una parte de dichas acciones, suficiente para pagar las citadas contribuciones. Las contribuciones insulares, municipales y locales impuestas a dichas instituciones, corporaciones y compañías serán devengadas por plazos semanuales, y todas las penalidades por falta de pago, la sujeción a embargo, incautación y venta de propiedad prescritas más adelante serán aplicables a dichas instituciones, .corporaciones y compañías en la misma forma que a individuos particulares." Comp. 1911, p. 593.

Se habla de la poca o nimia influencia que puede tener esa disposición en relación con el artículo 317. Se ha querido limitar sus efectos a la contribución que se impone a los bancos, pero una lectura superficial del artículo 322 revelará a cualquiera que el precepto se refiere también a las corporaciones. El artículo, como hemos visto, principia así: "Las contribuciones insulares, municipales y locales, impuestas sobre *acciones*, capital y propiedad de *instituciones,*

*corporaciones y compañías comprendidas dentro de las prescripciones de este título,* y sobre acciones de bancos  \*  \*  \* ''
(Las itálicas son nuestras). Si esta es la ley en Puerto Rico, no vemos la aplicación que pueda tener el caso de *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, que interpreta un estatuto bien distinto del estado de Iowa y que dispone (Sec. 1322 del Código de Iowa) que las acciones serán tasadas a los bancos y no a los accionistas. Parecía lógico que siguiendo el tenor literal de dicha ley, la Corte Suprema Federal llegue a la conclusión, como así lo resolvió, de que la contribución se impone a las acciones como propiedad de la corporación bancaria y no a los accionistas; que el banco tenía que pagarla como su propia deuda, sin derecho al reembolso por los accionistas y como una contribución sobre la propiedad, debiendo deducirse los bonos declarados exentos por estatutos federales. Lo contrario se prescribe por la misma sección del Código de Iowa para los bancos nacionales. La contribución se impone a las acciones en poder de los accionistas. El impuesto es un *excise* (arbitrio.) y nada hay que deducir por la inversión que tengan dichos bancos en bonos de los Estados Unidos. Esto es lo que se declara en el caso de *Des Moines National Bank* v. *Thomas Fairweather,* 263 U. S. 103. Aunque este caso se cita por la apelante no vemos qué ayuda puede prestarle, pues más bien favorece plenamente la posición de la parte apelada.

Se ha dado también importancia a la palabra ''mueble'' usada en el artículo 317 para aportarse un elemento más a la teoría de que por él se impone una contribución sobre toda la propiedad tangible de las corporaciones. Parece dársele a esta última palabra el significado que por su propia naturaleza tiene, o sea, como propiedad tangible. Sin embargo, los bienes muebles también lo son por disposición de la ley y como tal se comprenden, entre otros, las acciones en bancos o compañías de comercio, industria, etc., artículos 338 y 339 del Código Civil. No se puede encontrar

base por ese lado para sostener que el mero uso de la palabra mueble es un dato para decir que la contribución de que trata el artículo 317 es una sobre la propiedad. Además, si no podemos negar que dicho artículo establece la medida del capital en acciones, bonos y ganancias no divididas para regular el impuesto y que "ni será menor que el valor en el mercado de los bienes inmuebles y muebles," no puede haber duda por esta última distinción de la misma ley que la propiedad mueble a que se refiere el estatuto es la propiedad intangible representada por el agregado de las acciones. Si hay inmuebles es la única deducción que permite el estatuto, a semejanza que en Massachusetts como hemos visto, y la contribución alcanza en el remanente al capital en acciones; de otro modo la contribución se impone enteramente sobre las acciones y ganancias no divididas de la corporación, como se hizo en este caso, sin que fuera el deber del Tesorero deducir los demás bienes relacionados en la planilla, pues el dinero invertido en tales bienes es inmaterial por tratarse en sus efectos del cobro de una contribución sobre la franquicia.

Se ha insinuado asimismo que el Código Político tiene el Capítulo II en donde se trata exclusivamente sobre impuestos que tienen el carácter de "arbitrios" y que si el artículo 317 *supra* estableciese un arbitrio, el legislador debió incluirlo en dicho Capítulo II. El argumento es tan trivial que no requiere una seria consideración. Será suficiente decir que el Capítulo II se refiere exclusivamente a ciertos arbitrios sobre licores, tabaco y otros artículos propiamente seleccionados por razón de que no son parte esencial del consumo diario de la Isla, sino que se cuentan entre los artículos de lujo y comodidad, pero la palabra arbitrio tiene una significación más general y sería bien raro, por no decir ridículo, que el legislador hubiera colocado el impuesto sobre las franquicias de corporaciones al lado, por ejemplo, de un impuesto sobre perfumería. La contribución sobre herencias es también un arbitrio, Cooley, Vol.

1, pág. 133, y sin embargo no se clasifica en el Código Político entre los arbitrios del Capítulo II a que nos referimos.

No aparece que haya ocurrido en este caso, pero indudablemente con el sistema de considerar el impuesto sobre las corporaciones domésticas o sobre sus franquicias como un arbitrio, el legislador evita el peligro de que puedan adquirirse bonos exentos de contribución poco antes de archivarse las planillas y redimirse poco después para de ese modo evadir el sostenimiento de las cargas del gobierno. Por supuesto que aún tratándose de una contribución sobre los bienes de una corporación tal cosa no puede hacerse —58 L.R.A. 569—pero si la ley prescribe un método claro y sencillo ¿por qué no seguirlo?

Por todo lo expuesto, la sentencia de la corte inferior debió confirmarse.