GABRIEL DE LA HABA, JOSÉ R. ROSALES, JOSÉ R. MERA y JULIO
T. RODRÍGUEZ, peticionarios, *v.* TRIBUNAL DE CONTRIBU-
CIONES DE PUERTO RICO, demandado; TESORERO DE
PUERTO RICO, interventor. SAN GERÓNIMO DEVELOP-
MENT CO., INC., peticionaria, *v.* EL MISMO, demandado;
EL MISMO, interventor.

Números 277 y 278.

*Sometido:* 14 de noviembre de 1952. *Resuelto:* 19 de julio de 1954.

924

*Córdova & González* y *Gabriel de la Haba* y *Rafael Baragaño, Jr.,* abogados, respectivamente, de los peticionarios; *Hon. Secretario de Justicia José Trías Monge, (Víctor Gutiérrez Franqui, Procurador General,* en el alegato) y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del interventor, querellado en el pleito principal.

El Juez Presidente Señor Snyder emitió la opinión del tribunal.

A virtud del art. 298 del Código Político la contribución territorial se impone al "dueño" de bienes raíces. La cuestión que se presenta en estos casos es si el "arrendatario de bienes inmuebles por término aproximado de 1,000 años viene obligado a pagar contribuciones sobre la propiedad como "dueño" de bienes inmuebles dentro del significado del art. 298.[1]

---

[1] El art. 290 del Código Político leía en parte "Que toda propiedad no exenta expresamente del pago de contribuciones será tasada como imponible." Véase la Ley núm. 30, Leyes de Puerto Rico, 1951 ((1) pág. 65).

El art. 291 del mismo Código exime de contribución la propiedad de los Estados Unidos y del Pueblo de Puerto Rico. Véase la sec. 1 de la Ley núm. 120, Leyes de Puerto Rico, 1951 ((1) pág. 269).

El art. 298 disponía en parte "Que todos los bienes raíces serán tasados en el municipio en que estuvieren ubicados, para imponerles contribución, a

En 1921 el Gobierno de los Estados Unidos, representado por el Secretario de la Marina, "dió en arrendamiento" a Virgil Baker, sus herederos, sucesores y cesionarios una porción de la Reserva Naval San Gerónimo, de San Juan, por un término de 999 años.(²)   El arrendamiento—y el estatuto autorizándolo, 42 Stat. 122, 139, 140—disponía que en caso de guerra o de emergencia nacional, el Departamento de la Marina podría usar sin pago ni restricción alguna los terrenos arrendados a Baker.   La historia de esta transacción está expuesta en una opinión de nuestra Corte de Apelaciones sosteniendo el arrendamiento en un pleito instado por los Estados Unidos para cancelar el arrendamiento alegando que hubo fraude. *Baker* v. *United States*, 27 F.2d 863 (C.A. 1, 1928), cert. denegado, 278 U. S. 656.

En 1929 el Presidente de los Estados Unidos—por proclama expedida a virtud del art. 7 de la Carta Orgánica de Puerto Rico, 39 Stat. 951, 954, 48 U.S.C. sec. 748—traspasó al Pueblo de Puerto Rico todo derecho, título e interés de los Estados Unidos en ciertos terrenos que incluían la parcela de Baker.   46 Stat. 3004.   En un caso que trataba del derecho del Departamento de la Marina a usar la parcela de Baker durante la Segunda Guerra Mundial sin pagar compensación alguna, la Corte de Apelaciones resolvió que el

---

nombre de la persona que fuere dueño de los mismos o que estuviere en posesión de ellos el día quince de enero, y la persona en cuyo nombre aparecieren inscritos en dicha fecha será tenida por dueño legítimo de dichos bienes." (El art. 298 fué enmendado sustituyendo enero 1 por enero 15. Véanse la Ley núm. 133, Leyes de Puerto Rico, 1950 (pág. 343) ; Ley núm. 62, Leyes de Puerto Rico, 1952 (pág. 133)).

Estos artículos han sido enmendados un número de veces, pero tales enmiendas no son aquí pertinentes.   A menos que otra cosa se indique, al citar los artículos del Código Político, nos referimos a la versión que se encuentra en la Compilación de los Estatutos Revisados y Códigos de 1911, pág. 580 *et seq.*   Véase *Sucn. Giusti* v. *Tribl. Contribuciones*, 70 D.P.R. 117, 120, escolio 1.

(²) Al usar en adelante las palabras "arrendamiento" y "subarrendamiento" para describir el interés en esta parcela de Baker y sus cesionarios, no se nos debe entender como intimando que, a los fines del art. 298 del Código Político, ellos eran arrendatarios más bien que dueños de terreno. Desde luego, es ésa precisamente la cuestión ante nos.

derecho al uso libre reservado en el estatuto de 1921 y en el arrendamiento no dependía de que el título permaneciera en manos de los Estados Unidos. Por consiguiente, la Corte resolvió que el traspaso por los Estados Unidos al Pueblo de Puerto Rico en 1929 mediante proclama presidencial de "la reversión técnica del título de dominio que le quedaba a los Estados Unidos" (³) en la parcela de Baker después de otorgado el arrendamiento por 999 años, no privó a los Estados Unidos de su derecho reservado en el estatuto de 1921 y en el arrendamiento a usar libremente dicha parcela en caso de guerra o de emergencia nacional. *United States* v. *San Gerónimo Development Co.*, 154 F.2d 78 (C.A. 1, 1946). (⁴)

En 1930 Baker cedió todo su interés restante en la parcela en cuestión—el arrendamiento que todavía tenía por delante 990 años—a la San Gerónimo Development Co., Inc., a quien nos referiremos en adelante como la corporación. En distintas ocasiones en 1938 y 1939 José R. Rosales, Gabriel de la Haba, Julio T. Rodríguez y José R. Mera se convirtieron, cada uno de ellos, en "subarrendatario o cesionario" (⁵) de diferentes solares de la parcela de Baker mediante escrituras otorgadas por cada uno de ellos y la corporación. En 1939 De la Haba adquirió un solar adicional en igual forma. En las escrituras no se fijó canon de arrendamiento como tal. Más bien, cada subarrendatario o cesionario pagó una suma global por los derechos que recibió en el solar específico. Estas sumas variaban dependiendo del tamaño y localización de los solares, y las escrituras decían que a los fines de inscripción las sumas representaban el valor de los respectivos solares.

---

(³) *United States* v. *San Gerónimo Development Co.*, supra.

(⁴) El Tribunal indicó en el caso de *San Gerónimo* que el derecho reservado de uso era personal y no podía ser transferido al Pueblo de Puerto Rico. Podía otorgarse sólo por los Estados Unidos a Baker o sus cesionarios. Sin embargo, el Presidente no tenía autoridad bajo el art. 7 de la Carta Orgánica para hacer tal otorgamiento ni trató de hacerlo en la proclama del 1929. *United States* v. *San Gerónimo Development Co.*, supra, págs. 85-6.

(⁵) La Corte de Apelaciones los llama "subarrendatarios o cesionarios" en *United States* v. *San Gernónimo Development Co.*, supra, pág. 82.

En cada caso los derechos de los subarrendatarios o cesionarios en la parcela lo eran por el remanente de los 999 años que quedaba pendiente, o aproximadamente por 981 ó 982 años. Los cuatro subarrendamientos o cesiones individuales se hicieron sin restricción alguna con excepción de una disposición al efecto de que los solares sólo podían usarse para fines residenciales. Todas las transacciones relacionadas con la parcela de Baker fueron debidamente inscritas en el correspondiente registro de la propiedad.

En 1949 el Tesorero de Puerto Rico notificó a la corporación y a los cuatro subarrendatarios o cesionarios la imposición de contribuciones sobre la propiedad para los años 1946–47, 1947–48, 1948–49 y 1949–50 sobre las porciones de la parcela de Baker en las cuales cada uno de ellos tenía el interés antes descrito. La corporación y los cuatro subarrendatarios instaron pleito contra el Tesorero en el anterior Tribunal de Contribuciones para dejar sin efecto la imposición de estas contribuciones. Los casos de los cuatro subarrendatarios fueron consolidados y se vieron conjuntamente. El caso de la corporación se vió por separado, pero fué decidido a base de la opinión emitida en el caso de los subarrendatarios. Ambos casos fueron resueltos por el anterior Tribunal de Contribuciones a favor del Tesorero. Expedimos los autos solicitados en dos peticiones de *certiorari*—una de la corporación; y la otra de los subarrendatarios conjuntamente—a fin de revisar las sentencias del anterior Tribunal de Contribuciones declarando sin lugar las demandas. Resolveremos ambos casos por una sola opinión, ya que envuelven, a nuestros fines, las mismas cuestiones de hecho y de derecho.

Al desestimar la demanda, el anterior Tribunal de Contribuciones razonó sustancialmente así: Las conclusiones de la Corte de Apelaciones en los casos de *Baker* y de *San Gerónimo* con respecto a la naturaleza de los derechos creados en la parcela a favor de Baker y de sus cesionarios por el arrendamiento de 999 años son obligatorias para los tribunales de Puerto Rico, aun cuando no son técnicamente *res judicata* en

el presente caso. La Corte de Apelaciones indicó en el caso de *Baker* que las partes claramente tuvieron por miras darle a Baker el derecho al uso y disfrute permanente de la parcela. Se utilizó un arrendamiento a largo plazo para traspasarle la parcela a Baker y no un traspaso absoluto del título a fin de evitar cualquier duda que pudiera surgir con respecto al derecho de libre uso del Departamento de la Marina en caso de guerra o de emergencia. En el caso de *San Gerónimo* la Corte de Apelaciones indicó que los Estados Unidos, y ahora Puerto Rico, sólo tenían un derecho *técnico* de reversión luego de expirar el arrendamiento de 999 años.

En vista de lo anteriormente expuesto y de la forma y contenido de los varios documentos notariales, el anterior Tribunal de Contribuciones llegó a las siguientes conclusiones: Sujeto al derecho del Departamento de la Marina a usar libremente la parcela en caso de guerra o de emergencia nacional, Baker obtuvo un arrendamiento irrevocable a perpetuidad. Con excepción del nombre que se le dió a la transacción, el arrendamiento por 999 años fué una venta "pura y simple". Las escrituras posteriores fueron llamadas subarrendamientos únicamente para armonizarlas con el nombre que se le dió a la transacción original. A los fines del art. 298 del Código Político, los peticionarios, en posesión de los solares con derecho a usarlos a perpetuidad, son los dueños de los mismos y en consecuencia deben pagar nuestra contribución sobre la propiedad a virtud del referido artículo. Sería absurdo resolver que los Estados Unidos o Puerto Rico son los dueños de la parcela, desde el punto de vista del efecto práctico del art. 298, meramente porque Puerto Rico tiene el derecho técnico de obtener el título, efectivo dentro de diez siglos. En tanto en cuanto respecta al art. 298, este derecho de Puerto Rico, efectivo dentro de 1,000 años, es un "derecho inexistente". El imponer contribuciones sobre la propiedad a los peticionarios no equivale a imponer contribuciones a bienes propiedad de Puerto Rico, que están exentos a virtud del art. 291 del Código Político. El hecho de que los peticiona-

rios deben pagar la contribución sobre la propiedad no menoscaba el derecho del Departamento de la Marina al libre uso en caso de guerra o de emergencia. Un comprador de los solares de los peticionarios en una subasta porque éstos hayan dejado de pagar la contribución sobre la propiedad, recibiría el título sujeto al derecho de libre uso, del cual tal comprador tendría conocimiento con motivo de la inscripción del mismo en el registro de la propiedad.

Los peticionarios individuales señalan once errores. La corporación peticionaria señala cuatro. Varios de estos errores se traslapan y es innecesario considerarlos separadamente. Sin embargo, los hemos examinado todos cuidadosamente y creemos que los que ameritan discusión han recibido adecuada consideración en el curso de esta opinión. ·

■ No podemos convenir con los peticionarios en que bajo la doctrina de *res judicata* o de impedimento colateral el Tesorero está impedido de alegar en este caso que los peticionarios están obligados a pagar contribución sobre la propiedad de conformidad con el art. 298 del Código Político. (⁶) En primer lugar, el Pueblo de Puerto Rico intervino en el caso de *Baker* para un fin limitado, *Baker* v. *United States*, supra, pág. 877. En segundo lugar, Puerto Rico no fué parte en el caso de *San Gerónimo*. Pero lo que es más importante es el hecho de que en ninguno de estos dos casos consideró la Corte de Apelaciones la cuestión que se presenta en este caso. En el caso de *Baker* el arrendamiento por 999 años de los Estados Unidos a Baker fué declarado válido en un pleito instado por los Estados Unidos para cancelar el arrendamiento por fraude. En el caso de *San Gerónimo* se resolvió que el derecho reservado por los Estados Unidos a usar la parcela libre-

---

(⁶) Para nuestros casos sobre *res judicata* e impedimento colateral, véanse generalmente *Blanco* v. *Capital de Puerto Rico*, resuelto el 17 de mayo de 1954■; *Long Corporation* v. *Tribl. de Distrito*, 72 D.P.R. 788, 791; *Miller* v. *Cía. Ron Carioca*, 71 D.P.R. 707; *Avellanet* v. *Porto Rican Express Co.*, 64 D.P.R. 693, 700; *Pueblo* v. *Lugo*, 64 D.P.R. 554, 558; *Sucn. Rivera* v. *Lugo*, 63 D.P.R. 14; *Laloma* v. *Fernández*, 61 D.P.R. 569.

mente en caso de guerra o de emergencia nacional no se había extinguido por el traspaso a Puerto Rico, de parte de los Estados Unidos, de "la reversión técnica del título de dominio" que quedaba en los Estados Unidos luego de expirado el arrendamiento por 999 años. Ninguno de estos casos envolvía la cuestión—y la Corte de Apelaciones no la discute—de si la naturaleza y alcance del interés de Baker o de sus cesionarios en el arrendamiento por 999 años era uno de dominio dentro del significado del art. 298 del Código Político que exige al "dueño" de bienes inmuebles pagar nuestra contribución sobre la propiedad.

Es cierto que en el curso de sus opiniones en los casos de *Baker* y de *San Gerónimo* la Corte de Apelaciones emplea lenguaje que describe el "arrendamiento" por 999 años como un interés de arrendamiento.[7] Por otro lado, al explicar que el método de un arrendamiento por 999 años—más bien que una enajenación absoluta del título a favor de Baker—fué para salvaguardar el derecho reservado del libre uso por los Estados Unidos, la Corte de Apelaciones habla varias veces de la transferencia permanente a Baker del uso y disfrute de

---

[7] En el caso de *Baker* las partes esenciales del contrato entre los Estados Unidos y Baker se encuentran expuestas a la pág. 869. Las partes llaman el documento un "Arrendamiento". Dice que los Estados Unidos ". . . por la presente ceden en arrendamiento a . . . Baker . . . y sus herederos y cesionarios, por . . . 999 años . . . para que le dé el uso que y mejore como crea conveniente . . ." la parcela aquí envuelta. Continúa disponiendo el "Arrendamiento" que ". . . se otorga este arrendamiento en lugar de la transferencia absoluta de título que se dispone en previos convenios . . .". Dice también que ". . . el Departamento de la Marina retendrá el título . . ." al terreno, y podrá usarlo libremente en tiempo de guerra o de emergencia nacional. La Corte nuevamente se refiere a la transacción como un "arrendamiento" a la pág. 876.

De manera semejante, en el caso de *San Gerónimo* la Corte cita del "Arrendamiento" a la pág. 81 y le llama "arrendamiento". A la pág. 82, escolio 1, la Corte dice que la parcela fué "cedida en arrendamiento a Baker". Y a las págs. 86 y 87 se refiere a la transacción como un "arrendamiento a largo plazo" que disponía que los Estados Unidos "retendrán el título" al terreno y que los Estados Unidos tenían "la reversión técnica del título de dominio" al expirar el "arrendamiento" por 999 años.

la parcela.(8) Es obvio que la atención de la Corte de Apelaciones no se enfocó en la cuestión que ahora pende ante nos. Los dos casos de la Corte de Apelaciones envolvían problemas enteramente diferentes a la cuestión presentada aquí. El lenguaje que la Corte emplea en estos dos casos no va dirigido al problema ante nos y no es concluyente en este caso. No encontramos base posible para invocar bien sea la defensa de *res judicata* o bien la de impedimento colateral en este caso por lo que la Corte de Apelaciones haya dicho o resuelto en los casos de *Baker* y de *San Gerónimo*.(9)

■ ■ En los méritos, la posición de los peticionarios es como sigue: La Asamblea Legislativa tiene facultad para imponer contribuciones territoriales sobre el interés de arrendamiento sobre un inmueble. Sin embargo, ha optado por no ejercer dicha facultad; por el contrario, ha impuesto la referida contribución sobre "la propiedad o la cosa propiamente

---

(8) En el caso de *Baker* a la pág. 868 la Corte cita de un Informe del Comité de la Cámara que indica que el propósito de la Ley del Congreso fué proveer autoridad para "la enajenación permanente" de la parcela a Baker. A la pág. 868 la Corte se refiere a la transacción como una "permuta de propiedad." La Corte cita a la pág. 869 una carta del Secretario de la Marina manifestando que el terreno había sido "cedido permanentemente en arrendamiento" a Baker. A la pág. 870 la Corte habla del "terreno transferido". La Corte dice a la pág. 869 lo siguiente: "Surge que el Departamento de la Marina indudablemente adoptó la forma de la enajenación, es decir, un arrendamiento a largo plazo, de manera que no hubiera dificultades al reposeer del demandado Baker toda la propiedad, sin costo alguno, 'en caso de guerra o de emergencia nacional'." Finalmente, la Corte dice a la pág. 870: "Las pruebas demuestran que hubo la intención clara de otorgar un derecho permanente de uso y disfrute de cerca de 12 acres de terreno . . .".

En el caso de *San Gerónimo* la Corte indica a la pág. 80 que durante las negociaciones Baker " . . . trató de obtener el dominio de la parcela cedídale en arrendamiento." Dice a la pág. 81 que la Ley del Congreso fué aprobada para dar al Secretario de la Marina ". . . facultad para ceder en arrendamiento o enajenar permanentemente . . ." la parcela a Baker. Y a la pág. 82 la Corte se refiere a los peticionarios como ". . . subarrendatarios o cesionarios".

(9) *Cf. Developments in the Law—Res Judicata,* 65 Harv.L.Rev. 818, 842-6, y las autoridades allí citadas, en cuanto a los tipos de hechos y cuestiones de derecho a que se limita la aplicación de impedimento colateral: *N.L.R.B.* v. *Thayer Co. et al.,* 213 F.2d 748, (C.A. 1, junio 3, 1954).

dicha", y a tenor con el art. 298 del Código Político ha requerido de pago al "dueño". Como subarrendatarios o cesionarios de Baker, los peticionarios tienen interés de arrendamiento más bien que de dominio en la parcela, toda vez que el contrato entre Baker y los Estados Unidos era un arrendamiento más bien que una enajenación absoluta de dominio de parte de los Estados Unidos. En su consecuencia, los peticionarios, como subarrendatarios o cesionarios, no responden de la contribución territorial como "dueños" de bienes inmuebles. Por el contrario, el "dueño" de la parcela es o bien Puerto Rico o bien los Estados Unidos, los cuales están ambos exentos del pago de la contribución sobre la propiedad de conformidad con el art. 291 del Código Político. ([10])

En apoyo de la anterior contención, los peticionarios presentan una elaborada argumentación con respecto a las diferencias existentes entre un arrendamiento y un título de dominio bajo las leyes de Puerto Rico. Sostienen que las ventas de bienes inmuebles se rigen por los arts. 1334 y siguientes del Código Civil, ed. de 1930, mientras que a los arrendamientos los cubren los arts. 1432 y siguientes del mismo Código. Citan los arts. 280 y 281 del Código Civil; 10 Manresa, Comentarios al Código Civil Español, 2da. ed., págs. 7 *et seq.* y págs. 444 *et seq.; Rossy* v. *del Valle*, 34 D.P.R. 726, 731–2; y 51 C.J.S. sec. 202, pág. 808, como demostrativos de que una venta de terreno transfiere el dominio, que incluye tanto el título como el derecho de posesión, mientras que un arrendamiento otorga sólo el derecho al uso y disfrute del terreno. Y los peticionarios arguyen que en ausencia de una prohibición constitucional o estatutaria tanto bajo el derecho civil como bajo la ley común, no hay límite alguno sobre la duración de un arrendamiento, siempre que las partes conven-

---

([10]) Aparentemente los peticionarios formulan las contenciones alternativas al efecto de que bien Puerto Rico o los Estados Unidos son los "dueños" de la parcela porque (1) Puerto Rico tiene "la reversión técnica del título de dominio" después de 999 años y (2) los Estados Unidos tienen un derecho reservado de libre uso de la parcela en tiempo de guerra o de emergencia nacional.

gan en ello, citando 32 Am. Jur. sec. 64, pág. 79, y 51 C.J.S. sec. 29, pág. 535. Y véanse *Monbar, Inc.*, v. *Monaghan*, 162 Atl. 50 (Del., 1932); *Note*, Ann. Cas. 1914A, pág. 349; *Annotation*, 17 A.L.R.2d 566. Los peticionarios también descansan en el hecho de que tanto el arrendamiento original como los subarrendamientos fueron inscritos en el registro de la propiedad como arrendamientos sin que el registrador les señalara defecto alguno.

No nos detenemos a examinar las contenciones de los peticionarios al efecto de que (1) el "arrendamiento" original y los "subarrendamientos" son arrendamientos y no enajenaciones del título de dominio bajo nuestro Código Civil y la Ley Hipotecaria, y (2) que un arrendamiento por 999 años es válido bajo nuestra ley de propiedad. Además, convenimos en que la Asamblea Legislativa no dispuso en el art. 298 del Código Político que un arrendatario en posesión de la propiedad bajo un contrato corriente de arrendamiento por un término convencional viene obligado a pagar contribución sobre la propiedad. Pero no son éstas las cuestiones que están ahora ante nos. Más bien este caso envuelve el problema de si una persona que tiene derecho a la posesión y uso de terreno bajo un "arrendamiento" por aproximadamente 980 años es el "dueño" de dicho terreno dentro del significado de un estatuto contributivo, el artículo 298 del Código Político. Bajo dichas circunstancias el estatuto contributivo y no el Código Civil o la Ley Hipotecaria es el que rige. *Albanese* v. *Secretario de Hacienda*, ante pág. 324, y casos allí citados.

Existe otro argumento de parte de los peticionarios que tampoco es concluyente aquí toda vez que envuelve la ley de propiedad y no el estatuto contributivo. Los peticionarios sostienen lo siguiente: El art. 290 del Código Político dispone que, para los efectos de la tasación de contribuciones sobre la propiedad, la frase "propiedad real" se considerará sinónima de "inmuebles", según la definición hecha en los arts. 261 a 263 del Código Civil, ed. de 1930; un arrendamiento no es un inmueble bajo dichos arts. 261 a 263; por consiguiente, los

arrendamientos por diez siglos aquí envueltos no son tasables bajo los arts. 290 y 298 del Código Político. Pero decir que los peticionarios sólo tienen arrendamientos y que éstos no son tasables bajo el estatuto equivale a dar por resuelta la cuestión que se presenta aquí para decisión; es decir, si un "arrendatario" de propiedad inmueble por un término de 999 años es el "dueño" de la misma bajo el art. 298.

El resultado a que llegamos aquí no se afecta por la contención de los peticionarios al efecto de que los arts. 285 a 352 del Código Político claramente demuestran que lo que se tasa es el terreno—una cosa—en el sentido físico; que no se imponen contribuciones territoriales sobre derechos tales como arrendamientos, usufructos o servidumbres; y que la contribución se impone sobre el terreno y a base del valor de éste, independientemente de la naturaleza, número y valor de otros derechos reales sobre el mismo. No vemos conexión alguna entre estos puntos y el problema básico ante nos en cuanto a si la Asamblea Legislativa tuvo por miras incluir un "arrendatario" bajo un arrendamiento por diez siglos en el término "dueño" de terrenos dentro del significado del art. 298 del Código Político.

Los peticionarios descansan en la disposición del art. 298 al efecto de que " . . . la persona en cuyo nombre aparecieren inscritos en dicha fecha [quince de enero; bajo la enmienda de 1950, el primero de enero] será tenida por dueño legítimo . . ." de bienes raíces a los fines de imponer al "dueño" la contribución sobre la propiedad. Los peticionarios señalan el hecho de que el título de dominio de la parcela de Baker fué inscrito a favor de los Estados Unidos y ahora aparece inscrito a nombre del Pueblo de Puerto Rico. Por consiguiente, arguyen que debe resolverse que bien los Estados Unidos o bien Puerto Rico debe concluyentemente "ser tenido por dueño legítimo . . ." de la parcela, por lo que ésta está exenta de contribuciones sobre la propiedad bajo el art. 291 del Código Político. No estamos de acuerdo. El anterior lenguaje del art. 298 opera como una fuente conveniente de referencia para

beneficio del estado a los fines de cobrar la contribución sobre la propiedad. *Cf.* Ley núm. 62, Leyes de Puerto Rico, 1952 ((1) pág. 133), que enmienda el art. 298. Pero nadie que tenga todos los atributos prácticos de dominio puede descansar en dicho lenguaje para impedir que se le cobre la contribución territorial como "dueño" de bienes raíces meramente porque las partes en una transacción eligieron calificar de "dueño" a otro supuesto interés sobre terreno que para todo fin práctico no conlleva ninguno de los derechos de dominio. Independientemente de la validez de tal transacción como cuestión de derecho civil o hipotecario, el impacto del art. 298 como un estatuto contributivo no se evita tan fácilmente.

Los peticionarios señalan el lenguaje de los arts. 303, 315, 333 y 340 del Código Político y el art. 168 de la Ley Hipotecaria que demuestra claramente que lo que se tasa es la "propiedad inmueble". No vemos en qué forma el lenguaje de estas secciones favorece la contención de los peticionarios. Estos también nos llaman la atención hacia la disposición del art. 333 al efecto de que "Un inquilino o arrendatario de inmueble podrá pagar las contribuciones y recargos impuestos a dicho inmueble en cualquier tiempo después que los mismos hubieren vencido sin ser satisfechos, y deducir de la renta la cantidad por él satisfecha." De buen grado convenimos que esta parte del art. 333 sostiene la contención, que el Secretario de Hacienda no cuestiona, al efecto de que los arrendamientos corrientes no están sujetos a contribución sobre la propiedad. Pero una vez más no podemos aceptar la premisa de que este caso envuelve un arrendamiento corriente más bien que un interés en terrenos que, aun cuando se le llama "arrendamiento" en los documentos pertinentes, es en efecto dominio de aquéllos.

Los peticionarios arguyen que el llamarles "dueños" de la parcela a los fines del art. 298 del Código Político crearía un irresoluble dilema con respecto al derecho reservado de libre uso por los Estados Unidos. Su premisa es que a tenor con los arts. 315 y 347 del Código Político el adquirente

de bienes raíces vendidos por contribuciones adeudadas obtiene un título absoluto sobre ellos (art. 347) "libre de toda hipoteca, carga o cualquier otro gravamen." Arguyen entonces que el resolver que un comprador en pública subasta recibiría un título libre del derecho reservado de uso equivaldría a infringir la decisión del caso de *San Gerónimo* al efecto de que este derecho reservado permanece en manos de los Estados Unidos. Por otro lado, según los peticionarios, resolver que el comprador en una subasta por contribuciones adeudadas recibiría el título sujeto al derecho reservado de libre uso, sería infringir la disposición del art. 347 del Código Político al efecto de que tal comprador recibe un título absoluto.

La contestación es obvia. Desde luego convenimos con la premisa de los peticionarios de que en un caso corriente el comprador en una subasta recibe título absoluto sobre los bienes raíces que compra. *Riera* v. *Registrador*, 57 D.P.R. 673. Pero tenemos en este caso un factor decisivo. "Aquí nos confrontamos con un derecho reservado en el arrendamiento de Baker de conformidad con el mandato explícito del Congreso, que . . . [tenía] . . . facultad legislativa plenaria sobre el asunto." *United States* v. *San Gerónimo Development Co.*, supra, pág. 85. (Corchetes nuestros.) Bajo las circunstancias peculiares de este caso existe una limitación sobre los de otro modo incondicionales términos del art. 347 ya que el derecho reservado de libre uso de los Estados Unidos no puede ser menoscabado, ni por aplicación a la parcela de los términos del art. 347 ni por ningún otro medio.([11]) De

---

([11]) Los peticionarios citan las secs. 208, 215, 217, 220, 221 a 223, y 230 y 231 de *Restatement, Conflict of Laws*, y 51 C.J.S., secs. 4 y 231, págs. 513 y 848, respectivamente, en apoyo de la proposición de que aun los Estados Unidos están obligados por las leyes de Puerto Rico en cuanto a la naturaleza de los intereses sobre terreno que creara el arrendamiento de Baker. Y *cf. The RFC Mortgage Co.* v. *Registrador*, 60 D.P.R. 235. Pero por las razones apuntadas en el texto de la opinión, tal proposición general nada tiene que ver con este caso contributivo en el que este Tribunal está interpretando el alcance de un estatuto contributivo, el art. 298 del Código Político, según el mismo se aplica a una transacción peculiar de bienes inmuebles en la que los Estados Unidos eran parte.

ahí surge que el dilema contemplado por los peticionarios no existe. Un comprador en una subasta en este caso específico recibiría título sobre los solares de los peticionarios sujeto al derecho reservado de libre uso por los Estados Unidos, de lo cual dicho comprador tendría conocimiento en virtud de la inscripción del mismo en el registro de la propiedad. (¹²)

Dicho en pocas palabras, a fin de decidir este caso debemos dejar a un lado la cuestión de la naturaleza del interés de los peticionarios en la parcela de Baker como un punto técnico de derecho de propiedad. Por el contrario, debemos cerciorarnos de si la Asamblea Legislativa tuvo por miras en el art. 298 del Código Político exigirle a un "arrendatario" bajo un "arrendamiento" de 999 años que pagase la contribución sobre la propiedad. Y para contestar esta pregunta debemos considerar el razonamiento de la Corte de Apelaciones en los casos de *Baker* y de *San Gerónimo* y las disposiciones del "arrendamiento" y de los "subarrendamientos". Al así hacerlo no volveremos a la cuestión que hemos dejado a un lado; o sea, si los peticionarios son los "dueños" del terreno como cuestión de derecho de propiedad. Más bien examinaremos los casos de la Corte de Apelaciones y los documentos bajo los cuales los peticionarios están en posesión de sus solares únicamente para determinar si los derechos de los peticionarios en la parcela de Baker son tales que, si bien en posesión de sus solares bajo "arrendamientos" de diez siglos, los peticionarios son "dueños" de los terrenos dentro del signi-

---

(¹²) La falacia del argumento de los peticionarios sobre este punto queda demostrada por otras dos posibilidades: (1) ellos conceden que la Asamblea Legislativa podía, si quería, imponer contribución específicamente sobre tales arrendamientos a largo plazo; (2) la Corte de Apelaciones indicó en el caso de *San Gerónimo* que el título de dominio podía haber sido traspasado válidamente a Baker, sujeto al derecho reservado de usar libremente la parcela, escolio 14, infra. En cualquiera de estas situaciones hipotéticas los peticionarios—como arrendatarios o como dueños—estarían indudablemente obligados a pagar la contribución sobre la propiedad a pesar del hecho que en ambas el art. 347 presentaría exactamente el mismo problema en cuanto al derecho reservado de los Estados Unidos a usar libremente la parcela como el que tenemos en el caso de autos.

ficado de dicho término según éste se usa en el art. 298 del Código Político y en consecuencia están sujetos a la contribución sobre la propiedad.([13])

Estamos convencidos de que, bajo la Ley del Congreso que autorizó el arrendamiento a Baker, la evidencia documental y las circunstancias concurrentes, los peticionarios, como "subarrendatarios o cesionarios" de Baker, son para todos los fines prácticos, los "dueños" de los solares aquí envueltos dentro del significado del art. 298 del Código Político que le exige al "dueño" de bienes raíces que pague contribuciones sobre los mismos. Las partes en la transacción original, según lo revelan los casos de *Baker* y de *San Gerónimo*, consistentemente hablaron y escribieron en términos de una enajenación permanente de la parcela en cuestión. Finalmente se decidió llevar a efecto esta enajenación permanente en la forma de un arrendamiento por 999 años más bien que de un traspaso del título a fin de evitar cualquier posible problema en cuanto al derecho reservado de libre uso de los Estados Unidos en tiempos de guerra o de emergencia nacional. Esto desde luego mereció la conformidad de Baker precisamente porque equivalía a obtener el dominio para fines prácticos. Es cierto que posteriormente la Corte de Apelaciones indicó

---

([13]) Argumentan también los peticionarios que el antiguo Tribunal de Contribuciones erró al caracterizar el arrendamiento original y los subarrendamientos como "compraventas puras y simples" y como arrendamientos "a perpetuidad". Más bien, según los peticionarios, ellos disfrutan de subarrendamientos a largo plazo por término fijo. Pero esto es meramente otra manera de plantear la misma cuestión; es decir, si los peticionarios son dueños o arrendatarios de sus solares como cuestión de derecho civil o hipotecario. Como ya se ha visto, no nos preocupa en este caso el nombre correcto de las transacciones a los fines del derecho sobre la propiedad. No importa lo que resulte como cuestión de derecho civil o hipotecario, queda la cuestión en cuanto a si un arrendamiento por casi mil años constituye el dominio de terrenos para fines contributivos bajo el art. 298 del Código Político.

Por el mismo motivo, encontramos innecesario discutir la crítica que hacen los peticionarios de la manifestación del antiguo Tribunal de Contribuciones al efecto de que el derecho del Pueblo de Puerto Rico a obtener título de dominio sobre la parcela es "inexistente" porque no tendría efecto hasta pasados 10 siglos.

en su opinión en el caso de *San Gerónimo* que la precaución de retener técnicamente el título a fin de salvaguardar el derecho reservado de libre uso era innecesaria.([14])  Pero el Departamento de la Marina no podía predecir en 1921 que los tribunales asumirían tal posición.  Por lo tanto "retuvo el título", no para privar a Baker y sus cesionarios de cualquiera de los beneficios resultantes del título de dominio, sino únicamente para proteger su derecho reservado de libre uso.  Parece obvio que las partes otorgaron un arreglo por el cual Baker recibiría todos los beneficios de dominio, pero el Departamento de la Marina retendría un título en papel valedero dentro de 1,000 años solamente en un exceso de precaución para proteger su derecho de libre uso.  El "título" que permaneció en manos de los Estados Unidos al cabo de 999 años era una mera sombra que no tenía valor práctico y ni siquiera propósito técnico excepto el innecesario que acabamos de mencionar.

El criterio que acabamos de exponer se refuerza por el hecho de que, excepto por la designación de "arrendamiento", todos los otros atributos de las transacciones fueron los que de ordinario se encuentran en una enajenación del título.  Baker no venía obligado a pagar canon propiamente dicho: recibió la parcela en consideración a (1) la transferencia suya a los Estados Unidos de una parcela de terreno con sus servidumbres, (2) los servicios prestados y (3) la suma de un dólar.  Es significativo el hecho de que a Baker ni siquiera se le exigió que pagara el simbólico canon de un dólar anual.  El pago de un dólar, junto a los renglones (1) y (2), fué en pago total por la vida del "arrendamiento".  En igual forma, los "subarrendatarios" pagaron sumas globales más bien que cánones periódicos por el derecho a usar estos solares durante 980 años

---

([14]) En el caso de *San Gerónimo* la Corte de Apelaciones se negó (pág. 85) "a tratar de acomodar el derecho reservado en una de las categorías tradicionales del derecho de propiedad, bien bajo el sistema del derecho común o del derecho civil".  Y dijo que ". . . el Secretario de la Marina podía haber traspasado el título de dominio a Baker pero aún así, en virtud de la Ley de 1921, Baker hubiera gozado del mismo sujeto al derecho reservado al libre uso antes mencionado."

aproximadamente. Y las escrituras mediante las cuales se "subarrendaron" los solares a los peticionarios individuales decían que a los fines de la inscripción en el registro de la propiedad dichas sumas globales representaban el valor de los solares. Cf. *Annotation*, 17 A.L.R.2d 566, 569.([15]) A todos los fines prácticos, éstos "compraron" sus porciones de la parcela; las transacciones se caracterizaron como "arrendamientos" en los documentos pertinentes con el propósito de mantenerlas en armonía, a los fines del registro, con el "arrendamiento" original. Resolver bajo tales circunstancias que Baker o sus cesionarios no eran "dueños" de terreno bajo las disposiciones del art. 298 del Código Político, equivaldría a sobreponer la forma sobre la sustancia en el eminentemente práctico campo de las contribuciones. No podemos asumir tal posición en este caso. Por el contrario, resolvemos que los peticionarios, teniendo derecho bajo sus "arrendamientos" a usar y disfrutar sus solares por casi diez siglos, son los "dueños" de los mismos bajo el art. 298 y vienen por consiguiente obligados a pagar contribución sobre la propiedad por los mismos. *Cf. P. R. Telephone Co.* v. *Tribl. Contribuciones*, 68 D.P.R. 154, 158.

La conclusión a que hemos llegado encuentra apoyo en los casos resueltos en los Estados Unidos continentales. Arrendamientos de esta duración, o de un término más corto pero renovables para siempre, son práctica y "sustancialmente la enajenación del título . . ." 1 *American Law of Property*, pág. 369; id., págs. 210–1. Y casi uniformemente se ha resuelto que tales arrendamientos son tributables al arrendatario como "dueño" de la propiedad. *Annotation*, 55 A.L.R. 154; *Piper* v. *Town of Meredith*, 139 Atl. 294 (N.H., 1927); *United States* v. *Erie County, N. Y.*, 31 F.Supp. 57, 59 (Dist.

---

([15]) No estamos sugiriendo que nunca puede haber un arrendamiento por sumas englobadas. Véase *El Pueblo* v. *El Registrador*, 22 D.P.R. 803, 813–5. Pero normalmente por lo menos un arrendamiento dispone el pago periódico de un canon estipulado. Aquí no hubo tal disposición ni en el "arrendamiento" original ni en los "subarrendamientos".

Ct., N. Y., 1939). *Cf. Annotation*, 59 A.L.R. 701. Los peticionarios tratan de distinguir dichos casos. Primeramente, afirman que los arrendamientos en dichas jurisdicciones son considerados como "bienes inmuebles". Por los motivos ya expuestos, dicha cuestión es impertinente aquí. En segundo lugar, los peticionarios sostienen que los términos de los estatutos contributivos en los estados en cuestión son diferentes al art. 298. Sin embargo, hacen esta afirmación sin indicarnos diferencia sustancial alguna y nosotros no sabemos que existan. Un arrendatario bajo un arrendamiento *corriente* de terrenos pertenecientes al estado no viene obligado a pagar contribuciones sobre la propiedad bajo nuestro estatuto o bajo estatutos similares. *El Pueblo* v. *El Registrador*, supra, 816–7; *San Pedro etc. R. R. Co.* v. *Los Angeles*, 167 Cal. 425 (1914). Pero una vez más debe indicarse que no estamos tratando aquí con un arrendamiento corriente. ([16])

El lenguaje empleado por el Tribunal Supremo en un caso sustancialmente similar es de aplicación aquí. Dijo la Corte en *J. W. Perry Co.* v. *Norfolk*, 220 U. S. 472, 478:

" . . . El contrato crea un interés en el terreno algo parecido al arrendamiento perpetuo del derecho civil, en el cual el arrendatario era para muchos fines tratado como dueño, y respondía de las contribuciones. *Merlin Rep.*, vol. 10, pág. 232; *Cooper's Inst.* 277, 278; *Sohmn's Inst.*, 3ra. ed., 346. Asimismo era similar en su naturaleza a canon por terrenos, donde el canon anual y las contribuciones públicas se le cargan perpetuamente al terreno, en vez de pagarse o garantizarse la suma total. Allí el cedente es tratado como que tiene un título sobre el canon reservado, y el cesionario un título en el terreno, sujeto, entre otras cosas, al pago de contribuciones públicas. Duane, *Landlord &*

---

([16]) Sobre si arrendamientos corrientes o edificios están sujetos a contribución sobre la propiedad en los casos en que el dueño del inmueble está exento de contribución, véanse *Annotations*, 23 A.L.R. 248; 98 A.L.R. 1372; *Jetton* v. *University of the South*, 208 U. S. 489; *Portland Terminal Co.* v. *Hinds*, 39 A.2d 5 (Me., 1944) ; *The Long Term Ground Lease: A Survey*, 48 Yale L. J. 1400, 1405, escolio 35.

Para una discusión general de los problemas suscitados por arrendamientos a largo plazo, véase 2 Powel, *Real Property*, Parte III, pág. 341 *et seq.*

*Tenant,* 96; Cadwallader, *Ground Rent,* 101; *Robinson* v. *County of Allegheny,* 7 Pa. St. 161.

"La Corte de Apelaciones resolvió que en Virginia la regla general al efecto de que el terrateniente es responsable por las contribuciones 'no es de aplicación al caso de un arrendatario a perpetuidad donde éste es en efecto el verdadero dueño de la propiedad con derecho a usarla para siempre. A los fines de la contribución se hará caso omiso del mero título legal que permanezca en manos del terrateniente.' Adoptó aquella parte del lenguaje del caso de *Wells* v. *Savannah,* 87 Ga., 397, confirmado en 181 U. S. 531, donde, hablando de la responsabilidad de un individuo que tenía un arrendamiento perpetuo y el derecho a convertirse en dueño de la propiedad, el Juez Bleckley dijo: 'El valor de los bienes consisten en su uso, y aquél que posee su uso para siempre, aun cuando sea a condición, es el verdadero dueño de la propiedad por el presente' *Crowe* v. *Wilson,* 65 Md., 479; *Brainard* v. *Mayor of Colchester,* 31 Connecticut, 407."

El caso de *Palmer* v. *Connecticut Ry. Co.,* 311 U. S. 544, trataba de un problema diferente al aquí envuelto. Pero en su opinión disidente el Juez Douglas empleó lenguaje que sostiene nuestro punto de vista en este caso. A la pág. 564, al discutir un arrendamiento por 999 años, dijo que "Desde nuestro sitial en la historia 969 años es perpetuidad." Entonces dijo lo siguiente a las págs. 567–8:

"El problema de determinar el valor actual de este período de 969 años que no ha vencido, no es diferente al de valorar un título de dominio.

"El hecho de que este documento sea llamado un 'arrendamiento' no impide tal valoración. Porque como dijo este Tribunal en *Union Pacific Ry. Co.* v. *Chicago, R. I. & P. Ry. Co.,* 163 U. S. 564, 582, donde se interpretó un supuesto 'arrendamiento': 'La designación que las partes den a la transacción no determina su carácter ni sus relaciones legales.' La corte no sólo tiene el poder si que el deber de determinar su verdadero carácter considerando todas sus características intrínsecas y extrínsecas. Id., pág. 582. Un arrendamiento renovable para siempre o un arrendamiento a perpetuidad (como aquí) equivale a tener título de dominio. Así se ha resuelto en Connecticut, donde se hizo el arrendamiento de este caso, a los fines contributivos. *Connecticut Spiritualist Camp-Meeting Assn.* v. *Town of East Lyme,*

54 Conn. 152, 155–156; 5 Atl. 849. Como se dijo en *Piper* v. *Meredith*, 83 N.H. 107, 110; 139 Atl. 294, 'Está bien establecido que un arrendamiento a perpetuidad condicionado confiere al arrendatario un título de dominio determinable o básico'. O como se dijo en *Whittelsey* v. *Porter*, 82 Conn. 95, 102, un arrendamiento por 999 años es 'prácticamente un título de dominio anulable sólo al dejarse de' cumplir ciertas condiciones.' Y véanse *Montgomery* v. *Town of Branford*, 107 Conn. 697, 702; 142 Atl. 574; *Wells* v. *Savannah*, 181 U. S. 531; *Leary* v. *Jersey City*, 248 U. S. 328; *Trustees of Elmira* v. *Dunn*, 22 Barb. 402. El mero interés de reversión del arrendador en un arrendamiento perpetuo es tan remoto y especulativo que impide su valoración. Véanse *Chicago West Division Ry. Co.* v. *Metropolitan West Side Elevated R. Co.*, 152 Ill. 519, 524–526; 38 N.E. 736. Como dijo la Corte Suprema de Connecticut, el derecho de reversión bajo un arrendamiento por 999 años viene a ser un 'interés en el terreno meramente imaginario'. *Brainard* v. *Town of Colchester*, 31 Conn. 407, 411. Cualquiera que haya sido la catalogación precisa de todos los derechos del arrendatario (*Goodwin* v. *Goodwin*, 33 Conn. 314; *Dennis Appeal*, 72 Conn. 369; 44 Atl. 545) y cualesquiera que hayan podido ser los motivos comerciales y legales para el arrendamiento por 999 años en vez de la adquisición del activo por confusión, consolidación, u otra manera, es claro que a todos los fines prácticos el arrendatario retiene un control tan efectivo y un disfrute tan completo de la propiedad que bien puede ser tratado como el dueño. Tal arrendamiento es en efecto 'una venta práctica'. *Lord* v. *Town of Litchfield*, 36 Conn. 116, 126." ([17])

---

([17]) Aquí también el "interés de reversión . . . es tan remoto y especulativo que impide su valoración." El récord demuestra que ciertas instrumentalidades del gobierno de Puerto Rico compraron o expropiaron el derecho a uso y disfrute bajo el arrendamiento y el "derecho, título e interés" de la corporación peticionaria en varias porciones de la parcela. Indudablemente se calculó su compensación en la teoría de que en esencia se estaba traspasando el "dominio". Es decir, dudamos mucho que los precios englobados que se les fijaron se rebajaron en cantidad alguna por "la reversión técnica del título" a Puerto Rico pasados 1,000 años. Ello es así porque, como se advierte en otro contexto, no existe ". . . medio racional alguno por el cual determinar el valor de la posibilidad de que en alguna época . . . [remota] . . . en el futuro el terreno . . . revertirá al Pueblo de Puerto Rico. Todo lo que puede hacerse es aventurarse a conjeturar, y es derecho elemental que no se pueden determinar daños con meras conjeturas." *People of Puerto Rico* v. *United States*, 132 F.2d 220, 222 (C.A. 1, 1942), cert. denegado, 319 U. S. 752.

En vista de lo anteriormente expuesto, no podemos eludir la conclusión de que los peticionarios, como "subarrendatarios o cesionarios" de los solares de la parcela de Baker, por aproximadamente 1,000 años, son "dueños" de bienes raíces bajo el art. 298 del Código Político y por consiguiente vienen obligados a pagar contribución territorial sobre dichos solares.(17a)

Los peticionarios descansan luego en la práctica administrativa. Es indudable que las contribuciones sobre la propiedad siempre se han tasado al dueño y no al arrendatario de bienes raíces. A los arrendatarios nunca se les ha exigido el pago de la contribución territorial independientemente de si el dueño era una persona particular o una entidad exenta de contribuciones. *El Pueblo* v. *El Registrador*, supra, 816–17. Pero esa práctica administrativa específica, que se ajusta a la ley, no juega papel alguno aquí. La cuestión precisa en este caso es si un "arrendamiento" por 999 años constituye "dominio" bajo el art. 298. Descansar en tal práctica administrativa equivale a dar por sentada la cuestión que se discute en este caso.(18)

Los peticionarios también descansan en la práctica administrativa que estuvo en efecto hasta 1949 de no tasar contribución sobre la propiedad a individuos que fueran usufructuarios de solares bajo cesiones de los municipios de terrenos pertenecientes a éstos. Estas cesiones se hicieron a tenor

---

(17a) No hemos pasado por alto dos casos que citan los peticionarios: *Pueblo* v. *Armour Fertilizer Works*, 53 D.P.R. 218, que resuelve que los estatutos que imponen contribuciones deben interpretarse restrictivamente, y el de *Fajardo Sugar Co.* v. *Tesorero de P. R.*, 22 D.P.R. 311, 320, en el que este Tribunal manifestó que a algunas cosas de valor no se les ha impuesto contribuciones bajo nuestro estatuto. Ninguno de estos casos tiene nada que ver con el problema que se presenta en el de autos.

(18) En 1947 la Compañía de Fomento Industrial de Puerto Rico "subarrendó" una porción de la parcela de Baker de la San Gerónimo Development Co., Inc., por el período restante del arrendamiento de 999 años. En 1949 dicha Compañía cedió sus derechos en la misma a la Corporación de Fomento Industrial de Puerto Rico. Los peticionarios descansan en el hecho de que ninguna de estas compañías, que son instrumentalidades del gobierno de Puerto Rico, han sido requeridas del pago de contribuciones

con el art. 70 de la Ley núm. 53, Leyes de Puerto Rico, 1928 (pág. 335), y dichos usufructuarios no venían obligados a pagar contribución territorial excepto en aquellos casos en que la Asamblea Legislativa aprobara estatutos especiales disponiendo la imposición de tales contribuciones en determinados municipios para fines específicos. Ley núm. 174, Leyes de Puerto Rico, 1941 ((1) pág. 1051), según fué enmendada por la Ley núm. 224, Leyes de Puerto Rico, 1942 ((1) pág. 1253), derogada por la Ley núm. 122, Leyes de Puerto Rico, 1951 ((1) pág. 273); Ley núm. 104, Leyes de Puerto Rico, 1937 (pág. 253), derogada por la Ley núm. 52, Leyes de Puerto Rico, 1938 (pág. 167).([19])

Existen dos motivos por los cuales la práctica administrativa con respecto a estos usufructuarios no es decisiva en este caso. En primer lugar, la Asamblea Legislativa, deseando estimular la construcción de viviendas, autorizó a los municipios en el art. 70 a ". . . conceder solares a perpetuidad, para la construcción de casas en los mismos . . ." Y el art. 70 aparentemente eximió a tales usufructuarios del pago de la contribución sobre la propiedad al disponer como sigue: "Entre las condiciones de la concesión que se establezcan para cada caso, podrá figurar la del pago de un canon anual al municipio concedente, el cual canon será por lo menos igual al importe de la contribución sobre la propiedad que correspondería a

---

sobre la propiedad en relación con dicho "subarrendamiento". Sin embargo, esto escasamente constituye una práctica administrativa que pudiera afectar el resultado en este caso. Suponiendo, sin decidirlo, que estas compañías no estén exentas del pago de contribución sobre la propiedad, están sustancialmente en la misma posición que los peticionarios: La contribución sobre la propiedad no ha sido pagada previamente por los comparativamente pocos subarrendatarios de una parcela de terreno, la parcela de Baker; el Secretario de Hacienda afirma ahora que debe pagarse. Sostener que dejar de imponer dicha contribución previamente constituyó una práctica administrativa suficiente para impedir su cobro en esta fecha sería permitir a los peticionarios tapar el cielo con la mano.

([19]) Según los peticionarios, su caso es aún más fuerte que el de los usufructuarios de solares municipales porque (1) los Estados Unidos no se despojaron de la propiedad a perpetuidad sino que retuvieron el título sobre la misma, y (2) los Estados Unidos reservaron el derecho al libre uso.

ésta, si estuviere afectada al pago de esa contribución, y en dicha concesión se estipulará, además, que cualquier edificio en la propiedad arrendada estará sujeto al pago de contribución." Si el art. 70 como cuestión de derecho eximió a dichos usufructuarios de la contribución sobre la propiedad, no vemos base para que los peticionarios se quejen de tal clasificación legislativa. Además, hoy día ya no existe el problema toda vez que la contribución sobre la propiedad o el canon en lugar de la contribución se ha hecho aplicable a estos usufructos. Ley núm. 120, Leyes de Puerto Rico, 1951 (pág. 269) ; Ley núm. 2, Leyes de Puerto Rico, 1951, Décimoquinta Sesión Extraordinaria (pág. 97). [20]

En segundo lugar, y más importante aún, la práctica administrativa arroja luz sobre el significado de un estatuto sólo si éste es dudoso o ambiguo. *Sucn. Giusti* v. *Tribl. Contribuciones*, supra, pág. 143. Aquí el art. 298 del Código Político cubre tan claramente el caso ante nos, que cualquier práctica administrativa que produjera un resultado diferente, sería contraria a la ley y por consiguiente no sería decisiva sobre la cuestión del significado del estatuto. "Cuando un estatuto es claro, ningún contribuyente puede refugiarse en la interpretación administrativa o en un reglamento en contrario." *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, 64 D.P.R. 914, 937. Véase *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 274–5, y casos citados. [21] Cuando el lenguaje de un estatuto contributivo no es ambiguo, éste debe ser aplicado como la Asamblea

---

[20] En su Exposición de Motivos en la Ley núm. 120 la Asamblea Legislativa señala que en el pasado no se han pagado contribuciones sobre estos usufructos porque ". . . los mismos nunca han sido tasados." Continúa diciendo que " . . . [s]egún opinión emitida por la oficina del Procurador General, estos usufructos están sujetos a las leyes de contribuciones sobre la propiedad." Pero a renglón seguido advierte claramente que ". . . desde la fecha de esta Ley en adelante debe aplicarse a estos usufructos la ley de contribuciones sobre la propiedad." (Bastardillas nuestras.)

[21] Ciertas manifestaciones del Procurador General de Puerto Rico en su alegato y del juez sentenciador en su opinión en el caso de *Baker* al efecto de que el "arrendamiento" de Baker no estaba sujeto a nuestra contribución sobre la propiedad no son desde luego determinantes aquí.

Legislativa lo redactó, y no como este Tribunal o el Secretario de Hacienda pudieran querer que éste leyera. *Comunidad Fajardo v. Tribl. Contribuciones,* 73 D.P.R. 543, 551-2; *Clínica Dr. Mario Juliá, Inc. v. Secretario de Hacienda,* ante pág. 509. En su consecuencia, a los fines de este caso, no damos peso al hecho de que el entonces Tesorero dejara hasta 1949 de imponer contribuciones sobre la propiedad a los usufructuarios de solares municipales.

■ Los peticionarios también levantan varias cuestiones constitucionales: debido procedimiento de ley, igual protección de las leyes y menoscabo de las obligaciones de los contratos. Ninguna de éstas es cuestión sustancial. El debido procedimiento está predicado en la teoría de que no hay ley que autorice la contribución. Como hemos visto, el art. 298 claramente la autoriza. Los peticionarios sostienen que se les ha negado la igual protección de las leyes porque se les obliga a pagar contribución sobre la propiedad mientras que a otros arrendatarios y a usufructuarios de gobiernos municipales se les exime por acción administrativa. Nada más tenemos que añadir a lo que ya se ha dicho sobre (1) la diferencia entre los "subarrendamientos" de los peticionarios y los arrendamientos corrientes, y (2) la validez de tratar distintamente a los peticionarios y a usufructuarios de municipios antes de 1949. Los peticionarios no citan caso alguno que específicamente sostenga su posición y nosotros ninguno hemos encontrado.[22] Bajo estas circunstancias no vemos cómo podemos resolver que el exigir a los peticionarios el pago de contribución territorial que ellos adeudan les niegue la igual protección de las leyes.

■ Los peticionarios arguyen que el someterles al pago de nuestra contribución sobre la propiedad menoscaba la obligación del contrato entre Baker y los Estados Unidos. Su

---

[22] *Lugo v. Suazo,* 59 F.2d 386 (C.A. 1, 1932) ; *Harvey Bros. v. Sancho Bonet, Tes.,* 56 D.P.R. 264; *Porto Rican & American Ins. Co. v. Gallardo,* 35 D.P.R. 917; y *El Pueblo v. Neagle,* 21 D.P.R. 356, en los que se apoyan los peticionarios, no son de aplicación en este caso.

teoría es que el arrendamiento original disponía que los Estados Unidos retendrían el título de la parcela, por lo que el imponer contribuciones sobre la propiedad a dicha parcela equivale en efecto a establecer que el título no fué retenido por los Estados Unidos sino que le fué transferido a Baker. Este es desde luego una repetición del mismo argumento que hemos rechazado tantas veces en el curso de esta opinión. Hemos resuelto que la clase de interés que se creó en Baker por el arrendamiento original es tributable por el art. 298. Esta interpretación del art. 298 nada tiene que ver con la prohibición constitucional contra el menoscabo de la obligación de los contratos. Los peticionarios admiten que sus intereses en la parcela serían tributables si se enmendara el art. 298 para incluir tales "arrendamientos". De igual forma, los mismos son tributables bajo nuestra conclusión de que el art. 298 actualmente cubre dichos "arrendamientos". En este caso no encontramos menoscabo alguno de las obligaciones de los contratos.

▮ Finalmente, los peticionarios alegan que la contribución sobre la propiedad según se aplica aquí es inválida por constituir una contribución sobre propiedad perteneciente a los Estados Unidos que está prohibida bajo la doctrina establecida en *Domenech* v. *National City Bank*, 294 U. S. 199. El caso de *Domenech* no es de aplicación aquí porque (1) Puerto Rico, no los Estados Unidos, tiene el derecho teórico e ilusorio al dominio, efectivo dentro de diez siglos, y (2) lo que se tasa en este caso es el interés en los solares de los peticionarios, y no el de los Estados Unidos o el de Puerto Rico.

Por los motivos expuestos, el entonces Tesorero actuó correctamente al imponerle contribuciones sobre la propiedad a los peticionarios por los años 1946–47, 1947–48, 1948–49 y 1949–50.(23)

---

(23) Este caso desde luego se limita a sus hechos. No resolvemos ni sugerimos que un arrendatario bajo un arrendamiento con término considerablemente más corto, estaría obligado por el art. 298 del Código Político a pagar contribución sobre la propiedad.

*Las decisiones del anterior Tribunal de Contribuciones serán confirmadas.*

El Juez Asociado Sr. Negrón Fernández no intervino.